Donald **MARINO, Jean Popolizio, Marilyn Hirsch, Louis De Guiceis, Thomas Long, Peter Fludgate, Diane Peragine, Ralph Di Gioia, Barbara Bokina, Lois Mitchell, Joan Erwin and Mercedes Murray, Plaintiffs,**

v.

**The STATE OF NEW YORK, the Chief Administrator of the Courts of New York State, and the Office of Court Administration of the State of New York, Defendants.**

No. 82 CV 4102.

United States District Court,
E.D. New York.

Feb. 11, 1986.

---

Cahn, Wishod, Wishod & Lamb, Melville, N.Y. (Richard C. Cahn, Susan B. Blum, of counsel), for plaintiffs.

Robert Abrams, N.Y. State Atty. Gen., New York City (Arnold Fleischer, of counsel), Office of Court Admin., New York City (Steven Gross, of counsel), for defendants.

## ORDER

McLAUGHLIN, District Judge.

The attached Report and Recommendation of United States Magistrate A. Simon Chrein is hereby adopted as the Opinion of this Court.

I have carefully considered the objections filed by plaintiffs. Their main argument appears to be that the grant of summary judgment to defendants will deprive plaintiffs of their opportunity to prove that the New York State Office of Court Administration intentionally provided misleading data to the New York State Legislature, which subsequently enacted a statute that harmed a claimed property interest of plaintiffs. However, they have advanced no theory under which this allegation, even if true, would render the statute constitutionally infirm.

Plaintiffs posit, in essence, a constitutional right to review for accuracy the information upon which a legislature bases a decision, but they have referred the Court to no case in which a constitutional violation has been made out on such a theory. As Magistrate Chrein points out in his thorough Report and Recommendation, members of the general public have no procedural due process to a hearing before a legislative body makes a decision; they must make their views known through the political process.

In order to establish a substantive due process or equal protection violation, plaintiffs would have to show that the legislature acted in an irrational or arbitrary manner. The legislative history reveals, however, that that body carefully considered the problem and fully detailed its reasons for enacting the statute. Thus, even if the legislature based its decision in part on information that could be shown to be inaccurate, its action could not be regarded as capricious, and a constitutional violation could not be established. Accordingly, defendants are entitled to judgment as a matter of law.

SO ORDERED.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE

Aug. 12, 1985

A. SIMON CHREIN, United States Magistrate.

This is an action under 42 U.S.C. § 1983, and this court has jurisdiction to hear this case under 28 U.S.C. § 1343. This action alleges that the plaintiffs, as permanent civil servants, had a property right to promotions within the state's civil service system that was violated by the defendants when they granted provisional employees permanent status without following the state's civil service law in violation of the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution. The plaintiffs seek injunctive relief, compensatory damages, declaratory relief under 28 U.S.C. §§ 2201–2202, and attorneys' fees under 42 U.S.C. § 1988.

This action was referred to the undersigned to hear and report on the defendants' motion for judgment on the pleadings. Fed.R.Civ.P. 12(c). For the following reasons, I respectfully recommend that as a matter of law, the defendants should be granted summary judgment. Fed.R. Civ.P. 56.

## FACTS

Effective April 1, 1977, the State of New York unified its court system and provided that all nonjudicial employees of the courts would be employed by the State rather than by each local political subdivision. See N.Y.Jud.Law § 39, sub. 6 (McKinney 1983). Because a new classification structure for these employees was not adopted until 1979, civil service examinations for positions in the new unified court system were not given for a considerable period of time. See 1980 N.Y. Laws Chaps. 845 § 1, 846 § 1; Defendants' Memorandum of Law in Support of Their Motion for Judgment on the Pleadings at 2–3, 82 CV 4102 (JMcL), Feb. 13, 1985 [hereinafter cited as "Memorandum in Support"].

By 1980, seven judicial districts had significant numbers of provisional employees in competitive positions. They are as follows:

| Judicial District | Percent of Provisional Employees |
| --- | --- |
| Third | 59% |
| Fourth | 53% |
| Fifth | 48% |
| Sixth | 60% |
| Seventh | 52% |
| Eighth | 48% |
| Ninth | 64% |
| Tenth | 40%+ |

1980 N.Y. Laws Chaps. 845, 846 attached as Appendices I and II.

As a result, the state legislature enacted Chapters 845 and 846 of the Laws of the State of New York, 1980 that granted permanent status to those provisional employees who served satisfactorily and continuously for at least one year. In so doing, the legislature declared that there was a severe danger that a disruption of court services would occur if these positions had to be filled by competitive examination, that "a great many" of the provisional employees had served in their positions for more than five to ten years, that "the vast majority of present incumbents by their training and experience in their positions [had] acquired invaluable expert knowledge and skill in the performance of duties in the administration of the court systems," and that the foregoing makes it "impracticable to fill such positions by competitive examination[s]." 1980 N.Y.Laws Chaps. 845, 846.

Accordingly, the legislature granted the incumbent provisional employees permanent status in their positions without having a probationary period or competitive examination.

This action was brought in 1982 by nine employees of the unified court system and three employees of other state agencies, all of whom were permanent civil servants prior to the granting of permanent status to the provisional court employees. Complaint at ¶¶ 3–6. I note that although the plaintiff Joan Erwin is named in the caption of the complaint, there are no allegations concerning her in the body of the complaint. *See* Complaint at ¶¶ 3, 4. I recommend that the court deem the complaint amended, however, to include her in paragraph 3 of the complaint since it is clear from the briefs submitted and from Exhibit A (biographies of the plaintiffs) to the complaint that she was intended to be so included.

Each plaintiff alleges that they had taken and passed the prescribed civil service examinations for the positions occupied by the provisional employees and that they would have been promoted into those positions had the legislature not conferred permanent status on those incumbents. Complaint at ¶ 14.

The plaintiffs claim that the promotions to which they were entitled constituted a property right protected by the Fourteenth Amendment. They claim that they were deprived of this property right without due process of law since they were not given notice and an opportunity to be heard before this legislation was passed, Complaint at ¶ 25, and in violation of the equal protection clause since two classes of persons were created and treated unequally by the defendants arbitrarily, capriciously, and for no rational reason. Complaint at ¶¶ 28, 29.

The plaintiffs here seek a declaratory judgment that Chapters 845 and 846 are unconstitutional, to permanently enjoin the defendants from enforcing the statute, to award back pay and appointment to their appropriate promotions, and attorneys' fees. Complaint at ¶ VII.

The plaintiffs had previously brought this action in 1981 but in light of the related state action pending at the time, the court dismissed the suit; Judge George C. Pratt abstained, under the *Pullman* doctrine, since the state court's decision might have avoided the need to determine the federal constitutional issues. Affidavit of Paula E. Kennedy at ¶ 6, 82 CV 4102 (JMcL), Feb. 7, 1983. The complaint was dismissed "without prejudice to review if the statutes [were] held to be valid under

state constitutional standards." *Id.* (quoting from the court's opinion).

The plaintiffs renewed their suit in the instant action once the state's trial court issued its opinion but the court stayed the proceedings pending the completion of appellate review. Transcript of May 18, 1983 at 17–18, McLaughlin, J., 82 CV 4102 (JMcL). When the state's highest court affirmed that the statute was valid under the state's constitution this action was allowed to continue, and the defendants moved for judgment on the pleadings. Fed.R.Civ.P. 12(c).

In the state action, which involved different plaintiffs than the case at bar, the court found that Chapters 845 and 846 did not violate Article V, section 6 of the New York State Constitution. Attached as Appendix III. This provision provides, *inter alia*, that civil service appointments and promotions "shall be made according to merit and fitness to be determined, as far as practicable, by examination which, as far as practicable, shall be competitive ...." *Id.* The state court agreed with the legislature's conclusion that it was impracticable to fill so many positions by competitive examination. *Birkeland v. State of New York*, 64 N.Y.2d 663, 485 N.Y.S.2d 248, 474 N.E.2d 608 (1984), *aff'g*, 98 A.D.2d 395, 470 N.Y.S.2d 661 (2d Dep't 1984), *aff'g*, 116 Misc.2d 1, 456 N.Y.S.2d 297 (Sup.Ct. Queens Co. 1982).

DISCUSSION

This motion for judgment on the pleadings under Rule 12(c) should be treated as one for summary judgment under Rule 56 since the court should consider submissions outside the pleadings in deciding this motion.

The defendants, in this motion, argue that the plaintiffs have failed to state a claim under 42 U.S.C. § 1983 and that the defendants, therefore, are entitled to judgment on the pleadings. Since this report concludes that the plaintiffs would not be able to make out a claim under § 1983 under any set of facts as a matter of law, I respectfully recommend that the defendants be granted summary judgment.

*Defendants State of New York and the Office of Court Administration*

The plaintiffs' charges against the State of New York and the Office of Court Administration ("OCA"), as an arm of the state, should be dismissed since the state is immune from suit in federal court unless it expressly consents to be sued. The record does not reflect, and the plaintiff does not allege, that the State consents here.

Under the Eleventh Amendment, a state and its agencies are immune from suit in federal court unless it consents. *U.S. Const.* amend. XI. *See Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890) (Eleventh Amendment prohibits a citizen from suing his own state in federal court without the state's consent.)

Accordingly, the claims against the State of New York and the Office of Court Administration should be dismissed for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1).

*Due Process Violation*

The plaintiffs allege that they relied on the hiring and promotion custom and practice of the OCA in expecting to be promoted, that this expectation constituted an entitlement to a promotion, that this entitlement is a property right protected by the Fourteenth Amendment of the United States Constitution, and that the defendants deprived them of their property without due process by enacting and applying Chapters 845 and 846 of the laws of the State of New York of 1980. Complaint at ¶¶ 12, 14, 15, 19–27, 30; Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Judgment on the Pleadings at 4, 11–12, 14–16 [hereinafter cited as "Memorandum in Opposition"], April 23, 1985; Supplemental Brief at 6, May 8, 1985.

In determining this claim, the court is faced with the threshhold question of whether or not the plaintiffs' expectation of a promotion here was a property right within the due process clause of the Fourteenth Amendment. The court must then determine whether or not the state legisla-

ture violated substantive or procedural due process in enacting the statutes.

For the reasons stated below, I recommend that even if the plaintiffs are able to prove that they had a property interest in their expectations of promotion, there was neither a violation of substantive nor procedural due process in the statutes' enactment.

### Property Right

A property interest protected by the due process clause of the Fourteenth Amendment arises only when an individual has "a legitimate claim of entitlement" to the benefit. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 447 (2d Cir.1980). Such entitlements or property rights are created primarily by state law. *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978); *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).

The defendants argue that the laws of the State of New York gave the plaintiffs no expectation of promotion or appointment, and therefore, they have no property interest in their expected promotions. Memorandum in Support at 8–9.

In fact, the defendants point to case law explicitly holding that state law does not create a property right in the New York State Civil Service System. *See, e.g., Schwartz v. Thompson*, 497 F.2d 430, 433 (2d Cir.1974); *Grossman v. Schwartz*, 514 F.Supp. 421, 422 (S.D.N.Y.), *aff'd*, 679 F.2d 872 (2d Cir.1981); *Koscherak v. Schmeller*, 363 F.Supp. 932, 934–35 (S.D.N.Y.1973), *aff'd*, 415 U.S. 943, 94 S.Ct. 1462, 39 L.Ed.2d 560 (1974). *Accord LaGrange v. City of Minneapolis*, 645 F.2d 615 (8th Cir.1981). *Cf. Cassidy v. Mun. Civil Serv. Comm'n of the City of New Rochelle*, 37 N.Y.2d 526, 528–29, 375 N.Y.S.2d 300, 302, 337 N.E.2d 752, 753–54 (1975) (the state statute proscribing selection methods for hiring civil servants is not unconstitutional

under Article V of the New York State Constitution).

In *Cassidy*, the state's highest court summarily determined that a civil servant has no "legally protectable interest" in an appointment or promotion and, therefore, has no due process protections under the state or federal constitutions. The state court's determination in *Cassidy* does not end the inquiry, however, since " 'federal constitutional law determines whether (an) interest rises to the level of a "legitimate claim of entitlement" protected by the Due Process Clause [of the Fourteenth Amendment].' " *Quinn*, 613 F.2d at 447 (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978). Therefore, although the state courts have clearly determined that state law does not provide civil servants an entitlement to a promotion, federal law may provide the plaintiffs with an additional way to establish a property right to their promotions.

A plaintiff need not show an explicit statute, regulation, or contract wherein the state created his right to an employment benefit, However, his entitlement to that benefit may be established by showing that there was a custom, policy, or practice of the state agency on which the plaintiff relied. *Perry v. Sindermann*, 408 U.S. 593, 601–03, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972) (plaintiff must allege "the existence of ... understandings ... fostered by state officials, that may justify his legitimate claim of entitlement....."). *See Bishop*, 426 U.S. at 344, 96 S.Ct. at 2077 ("[a] property interest in employment can, of course, be created by ... an implied contract." (footnote omitted)).

A "longstanding pattern of practice" may establish an individual's entitlement to a particular government benefit. *Quinn*, 613 F.2d at 448. *See Perry*, 408 U.S. at 601–03, 92 S.Ct. at 2699–2700; *Roth*, 408 U.S. at 578, 92 S.Ct. at 2709 (Court recognized that a state university rule or policy may entitle plaintiff to an employment benefit); *Schwartz v. Thompson*, 497 F.2d 430, 433 (2d Cir.1974) (a *"de facto* 'right' " to a

promotion may have been shown where the "vast majority" of similarly situated civil servants were promoted); *Whitaker v. Bd. of Higher Educ. of the City of New York,* 461 F.Supp. 99, 104–05 (E.D.N.Y.1978) (Mishler, C.J.). The plaintiffs here, then, may prove an entitlement to promotion by showing a policy or practice within the OCA or civil service system.

Indeed, the plaintiffs here allege that they relied upon the employment customs and practice of the OCA which allegedly assured them automatic promotions. Supplemental Brief at 5–6, May 8, 1985; Memorandum in Opposition at 11, 14, 15. The plaintiffs allege that "all eligible persons who had passed a competitive examination [and who] served in a competitive position for a relatively short period of time, were always promoted." Supplemental Brief at 5–6. They further allege that this practice was consistent over the course of many years. *Id.* at 6.

The issue of entitlement, then, would be a disputed issue of fact, necessitating further discovery by the parties and precluding summary judgment on the issue. *Accord Perry v. Sindermann,* 408 U.S. 593, 602–03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972); *Quinn,* 613 F.2d at 448; *Whitaker v. Bd. of Higher Educ. of the City of New York,* 461 F.Supp. 99, 105 (E.D.N.Y. 1978). Even if the plaintiffs were able to prove their entitlement to promotion, however, their due process claim should fail for the following reasons.

### Procedural Due Process

The plaintiffs allege that the state legislature, in enacting Chapters 845 and 846, deprived them of their property rights or entitlements to promotion without procedural due process as guaranteed by the Fourteenth Amendment, that is, without reasonable notice and a fair opportunity to be heard. Complaint at ¶¶ 23–25. The defendants maintain that "[t]he New York State Legislature has exclusive authority to determine the need for legislation and to enact it" and that the "[p]laintiffs were not entitled to notice or to an opportunity to participate in the legislative process other than through their elected representatives." Memorandum in Support at 9.

"The Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy." *Minnesota State Bd. for Community Colleges v. Knight,* 465 U.S. 271, 283, 104 S.Ct. 1058, 1065, 79 L.Ed.2d 299 (1984); *Greenberg v. Bolger,* 497 F.Supp. 756, 774 (E.D.N.Y.1980) (Weinstein, C.J.). Even interested members, with a stake in the outcome of the decision or act, have no right to be heard before a policy is adopted. *Knight,* 465 U.S. at 284, 104 S.Ct. at 1066. *See Bragg v. Weaver,* 251 U.S. 57, 58, 40 S.Ct. 62, 63, 64 L.Ed. 135 (1919). It has been long established that when a policy decision

> applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption.... General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.... In considering this case in this court we must assume that the proper state machinery has been used.... ... There must be limit to individual argument in such matters if government is to go on.

*Bi-Metallic Investment Co. v. State Bd. of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915).

While it is true that policy decisions affecting the property rights of a small number of people may invoke procedural due process protection,

> [w]hen governmental action affects more than a few individuals, concerns beyond economy, efficiency and expedition tip the balance against finding that due process attaches. We may expect that as the sweep of governmental action broadens, so too does the power of the affected group to protect its interests outside rigid constitutionally imposed proce-

dures. Moreover, "the case for due process protection grows stronger as the identity of the persons affected by a government choice becomes clearer...." *O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 800–01, 100 S.Ct. 2467, 2483, 65 L.Ed.2d 506 (1980) (footnotes omitted) (Blackmun, J., concurring) (quoting L. Tribe, *American Constitutional Law* 503–504 (1978)). *See Bi-Metallic,* 239 U.S. at 445, 36 S.Ct. at 142.

Justice Blackmun goes on to suggest that where a small, identifiable group of individuals are singled-out by a legislative act or where a group of "discrete and insular minorities" are concerned, the more likely it is that the act will be subject to procedural due process requirements since these individuals are unlikely to be able to effectively participate in the political process. *O'Bannon,* 447 U.S. at 800–01 & n. 8, 100 S.Ct. at 2483 & n. 8.

The instant case, however, is not the case where "[a] relatively small number of persons" were "exceptionally affected, in each case upon individual grounds ...." *Bi-Metallic,* 239 U.S. at 446, 36 S.Ct. at 142. *Cf. Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982) (Although state court granted the plaintiff a procedural due process right to a hearing before he could be fired from his state civil service position, the court noted that this case was not one where "any great number of claimants are in [the plaintiff's] position" or where granting a procedural due process right to the plaintiff here would be "unduly burdensome" to the state.). It concerns, instead, a broad policy affecting hundreds of provisional as well as permanent civil servants and the entire court system serving the citizens of eight judicial districts of the state.

*Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), relied upon by the plaintiffs, is inapposite here. *See* Memorandum in Opposition at 17. In *Vlandis,* the Court determined that the State of Connecticut deprived the plaintiff-class of procedural due process when it set an arbitrary definition for its residency require-

ment at the state university. The plaintiffs complained that they were not given an opportunity to prove that they were in fact Connecticut residents despite the guidelines in the state's residency rule. The Court essentially determined that the state could not deny procedural due process to the plaintiffs here simply for the "[s]tate's interest in administrative ease and certainty." *Vlandis,* 412 U.S. at 451, 93 S.Ct. at 2236. The Court found that the state had more reasonable alternatives available to it to make residency determinations.

In my view, this case is unlike *Vlandis* in that the legislature here clearly considered all its available alternatives. While each alternative involved its own negative effects, the legislature clearly articulated that its reasons for choosing to grant permanent status its provisional court employees was not merely for convenience, but out of necessity. Concerns of federalism and separation-of-powers counsel this court to accept the rational reasons as set out by the legislature without interference. *See Knight,* 465 U.S. at 284, 104 S.Ct. at 1066.

Therefore, when the legislature enacts a law that affects a great many people or the public broadly, such as Chapters 845 & 846, interested citizens have no procedural due process rights. The plaintiffs, then, have no right to procedural due process in the enactment of Chapters 845 and 846, but are left to express their disagreement with the legislature within the political process. *Id.* at 284–87, 104 S.Ct. at 1066–67 ("It is inherent in a republican form of government that direct public participation in government policymaking is limited.... Disagreement with public policy and disapproval of officials' responsiveness ... is to be registered principally at the polls." (citation omitted)).

Chapters 845 and 846, then, are subject only to a substantive due process test for irrational arbitrary reasons or illicit motives. *See* L. Tribe, *American Constitutional Law* 502 & n. 4 (1978).

### Substantive Due Process

An individuals' substantive due process rights have been violated when she has

been deprived of a property or liberty interest for irrational, arbitrary, or capricious reasons. *See Whitaker,* 461 F.Supp. at 103–04, *citing Schware v. Bd. of Bar Examiners of New Mexico,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). Therefore, assuming that the plaintiffs are able to prove a property right or entitlement to their promotions, they must then show that the legislature's reasons for enacting Chapters 845 and 846 were irrational, arbitrary, or capricious.

The legislative purpose supporting the enactment of Chapters 845 and 846 is clearly detailed within the statute itself. The state legislature determined that between 40–64% of the work force in the affected judicial districts were provisional employees and that the prospect of replacing that many people in order to comply with current civil service law presented "a severe danger that a disruption of court services will occur." In addition, the legislature expressly found that a great many of the incumbent provisionals had served from 5–10 years in their positions, acquired training, experience, and invaluable expert knowledge and skill in the performances of [their] duties, and that it would have been "impracticable to fill such positions by competitive examination." 1980 N.Y.Laws Chaps. 845, 846.

In addition, in determining whether or not the legislature's reasons for the adoption of these laws were arbitrary, irrational, or capricious, the court may accept guidance from the state's highest court. *See Birkeland v. The State of New York,* 64 N.Y.2d 663, 485 N.Y.S.2d 248, 474 N.E.2d 608 (1984). *Birkeland,* the court refused to find Chapter 846 unconstitutional under Article V of the New York State Constitution. The court was satisfied that the legislature met the "fitness and merit" standards mandated in the state constitution and that it was "impracticable" for the

legislature to have examined and appointed the necessary candidates at that time. The court accepted the legislature's declared justification for the laws as the best solution for their perceived problem and refused to "second guess" their decision. *Id. See Birkeland v. State of New York,* 98 A.D.2d 395, 398, 470 N.Y.S.2d 661, 664 (2d Dep't), *aff'd,* 64 N.Y.2d 663, 485 N.Y.S.2d 248, 474 N.E.2d 608 (1984).

Since *Birkeland* did not involve any federal constitutional challenges to Chapter 845 or 846, there is no collateral estoppel on the issue of substantive due process and the state court's judgment is only some evidence of the rationality of the statute's enactment.[1]

While the legislature may have been faced with a difficult problem, its solution cannot be said to be irrational or arbitrary. Therefore, any substantive due process rights the plaintiffs may have had in their promotions were not violated.

Since the facts alleged by the plaintiff, viewed even in the best light, could not support a finding of irrational or arbitrary reasons and since the plaintiffs allege no evidence of an illicit motive on the part of the legislature, no further inquiry into the legislature's purpose for enactment is warranted. *See* L.Tribe, *American Constitutional Law* 592–98, 593 n. 9 (court will inquire into legislature's motive only in extraordinary circumstances), 595 n. 5 (same).

*Equal Protection*

The plaintiffs also allege that the legislature "arbitrarily," "capriciously," and "with no rational basis or compelling state interest" enacted Chapters 845 and 846 in violation of the equal protection clause of the Fourteenth Amendment. Complaint at ¶¶ 28–29. In fact, the plaintiffs allege intentional wrongdoing on the part of the defendant—OCA by deliberately supplying the legislature with erroneous information

1. Note that the plaintiffs are not barred from raising the federal constitutional claims in federal court here even though such claims could have been raised in the state action. *See Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 80–85, 104 S.Ct. 892, 896–98, 79 L.Ed.2d 56 (1984) (Where a federal court abstains from deciding federal claims until a state court addresses related state claims, the plaintiff is precluded from raising her federal claims in federal court if those federal claims could have been raised in the context of the state court action).

as part of its "patronage" plan. Supplemental Brief at 3.

The legislature created two classes of civil servants within the OCA when they enacted Chapters 845 and 846: covered-in provisional employees and those permanent civil servants who were on established civil service lists and eligible for promotion. Since this dispute does not involve a fundamental right of the plaintiffs and the plaintiffs are not members of a suspect class, the appropriate test for an equal protection analysis here is the rational-basis standard. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312–14, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976). A statute does not violate the equal protection clause "if it is 'rationally related to furthering a legitimate state interest.'" *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979) (quoting *Murgia*, 427 U.S. at 312, 96 S.Ct. at 2566). *See Murgia*, 427 U.S. at 314, 96 S.Ct. at 2567; *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961) ("A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.").

In enacting Chapters 845 and 846, the legislature intended to bring the OCA in compliance with the state civil service system, to comply with the state constitution's merit and fitness requirement, and to avoid severe disruption of the state's court system by massive changes in personnel. *See* 1980 N.Y.Laws Chaps. 845, 846.

The plaintiff's claims of irrationality primarily concern their allegation that it was in fact practicable for the state to have filled the provisional positions through the usual civil service examination method and, therefore, there was no rational basis for these laws. *See* Complaint at ¶ 11. Memorandum in Opposition at 19. While not considering a federal equal protection claim, the state's highest court in *Birkeland* found that it was *not* practicable for the state to fill these positions by the usual civil service method. *Birkeland v. State of New York*, 64 N.Y.2d 663, 664, 485 N.Y. S.2d 248, 474 N.E.2d 608 (1984).

This decision by the state court estops the plaintiffs here from relitigating the practicability of filling the positions by civil service exams. Other than conclusory allegations of wrongdoing by the OCA, Supplemental Brief at 3–4, the plaintiffs have alleged no other facts on which the court could find the lack of a rational relationship between the statutes and the legislature's purpose.

The legislature clearly had to balance several competing interests in resolving the personnel dilemma in the court system. "State legislatures [, however,] are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality." *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961). *See United States v. Carolene Products Co.*, 304 U.S. 144, 152–54, 58 S.Ct. 778, 783–84, 82 L.Ed. 1234 (1938) (rational basis in presumed).

Accordingly, this court has no federal constitutional basis to interfere with the enactment of Chapters 845 and 846. While the plaintiffs may disagree with the legislature's choice, in my view, the statutes have a rational basis. *See* discussion of substantive due process above.

For the foregoing reasons, I respectfully recommend that the plaintiffs have alleged no set of facts that they could prove that would make out a claim under § 1983, and the defendants should be granted summary judgment.

Any objections to the recommendations contained in this report must be filed with the Honorable Joseph McLaughlin no later than August 28, 1985.

APPENDIX I

1980 New York Laws

**Unified Court System—Employment and Maintenance of Certain Personnel**

*Memorandum relating to this chapter, see page 1914*

**CHAPTER 845**

An Act in relation to maintaining services in the unified court system and in-

suring for the continued employment of certain personnel of such system.

Approved and effective July 1, 1980.

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Legislative findings and intent. The legislature hereby finds and declares that, prior to the unified court budget act enacted as chapter nine hundred sixty-six of the laws of nineteen hundred seventy-six, many employees of the unified court system of the state of New York were employed and paid by the political subdivisions of the state, that because chapter nine hundred sixty-six of the laws of nineteen hundred seventy-six mandated the administrative board of the judicial conference to adopt a classification structure for nonjudicial employees, and that such classification structure was not adopted until May twenty-eighth, nineteen hundred seventy-nine. The legislature further finds that examinations for positions in the unified court system have not been given for a considerable period of time. As a result, in the third judicial district, fifty-nine percent of positions classified in the competitive class are provisionally filled, in the fourth judicial district, fifty-three percent of positions classified in the competitive class are provisionally filled, in the fifth judicial district, forty-eight percent of positions classified in the competitive class are provisionally filled, in the sixth judicial district, sixty percent of positions classified in the competitive class are provisionally filled, in the seventh judicial district, fifty-two percent of positions classified in the competitive class are provisionally filled, in the eighth judicial district, forty-eight percent of positions classified in the competitive class are provisionally filled, and in the ninth judicial district, sixty-four percent of positions classified in the competitive class are provisionally filled. The legislature also finds and declares that there is a severe danger that a disruption of court services will occur in the third, fourth, fifth, sixth, seventh, eighth, and ninth judicial districts by virtue of the fact that, in each such district, the percentage of competitive class positions filled provisionally exceeds forty-five percent. The legislature further finds that a great many present incumbents have served more than five and up to ten years in their positions, that the vast majority of present incumbents by their training and experience in their positions have acquired invaluable expert knowledge and skill in the performance of duties in the administration of the court systems, that the initial application of competitive class requirements to positions in the third, fourth, fifth, sixth, seventh, eighth, and ninth judicial districts makes it impracticable to fill such positions by competitive examination, and that in order to avoid any danger which disruption of the court system would entail, it is essential that means be provided to continue as permanent appointees qualified incumbents serving provisionally in positions in the third, fourth, fifth, sixth, seventh, eighth, and ninth judicial districts. It is the purpose of this act, therefore, to provide an orderly method for continuing in service with the rights and tenure of permanent appointees incumbents of such positions who have served satisfactorily and continuously therein for at least one year.

§ 2. For the purposes of continuing essential activities and providing court services without interruption or disruption, and notwithstanding any inconsistent provision of law, rule, or regulation, incumbents occupying positions in the third, fourth, fifth, sixth, seventh, eighth, and ninth judicial districts in the unified court system which have been classified in the competitive class shall be granted permanent competitive class status, without probationary period or further examination, if they have been employed in or performed the duties of such position for one year prior to the effective date hereof. Incumbents who have served continuously for one year prior to the effective date hereof, and who have been provisionally promoted during such time shall be granted permanent competitive status in the position to which they have been promoted. Persons whose classification appeals have been granted shall

receive permanent competitive status in the title awarded if they have served in the position for such year.

§ 3. For the purposes of promotion and layoff, persons who attain permanent status by virtue of this act shall have the seniority theretofore held by them as among themselves.

§ 4. This act shall apply to employees of the unified court system working in the third, fourth, fifth, sixth, seventh, eighth, and ninth judicial districts only.

§ 5. This act shall take effect immediately.

## APPENDIX II

### 1980 New York Laws

### Unified Court System—Tenth Judicial District—Employment and Maintenance of Certain Personnel

*Memorandum relating to this chapter, see page 1914*

### CHAPTER 846

An Act in relation to maintaining services in the unified court system in the tenth judicial district and insuring for the continued employment of certain personnel of such system in such district.

Approved and effective July 1, 1980.

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Legislative findings and intent. The legislature hereby finds and declares that, prior to the unified court budget act enacted as chapter nine hundred sixty-six of the laws of nineteen hundred seventy-six, many employees of the unified court system of the state of New York were employed and paid by the political subdivisions of the state, that chapter nine hundred sixty-six of the laws of nineteen hundred seventy-six mandated the administrative board of the judicial conference to adopt a classification structure for nonjudicial employees, and that such classification structure was not adopted until May twenty-eighth, nineteen hundred seventy-nine.

The legislature further finds that examinations for positions in the unified court system have not been given for a considerable period of time. As a result, in the tenth judicial district more than forty percent of positions classified in the competitive class are provisionally filled. The legislature also finds and declares that there is a severe danger that a disruption of court services will occur in the tenth judicial district by virtue of the fact that, in such district, the percentage of competitive class positions filled provisionally exceeds forty percent. The legislature further finds that a great many present incumbents have served more than five and up to ten years in their positions, that the vast majority of present incumbents by their training and experience in their positions have acquired invaluable expert knowledge and skill in the performance of duties in the administration of the court systems, that the initial application of competitive class requirements to positions in such district makes it impracticable to fill such positions by competitive examination, and that in order to avoid any danger which disruption of the court system would entail, it is essential that means be provided to continue as permanent appointees qualified incumbents serving provisionally in positions in such district. It is the purpose of this act, therefore, to provide an orderly method for continuing in service with the rights and tenure of permanent appointees incumbents of such positions who have served satisfactorily and continuously therein for at least one year.

§ 2. For the purposes of continuing essential activities and providing court services without interruption or disruption, and notwithstanding any inconsistent provision of law, rule, or regulation, incumbents occupying positions in such district in the unified court system which have been classified in the competitive class shall be granted permanent competitive class status, without probationary period or further examination, if they have been employed in or performed the duties of such position for one year prior to the effective date hereof.

Incumbents who have served continuously for one year prior to the effective date hereof, and who have been provisionally promoted during such time shall be granted permanent competitive status in the position to which they have been promoted. Persons whose classification appeals have been granted shall receive permanent competitive status in the title awarded if they have served in the position for such year.

§ 3. For the purposes of promotion and layoff, persons who attain permanent status by virtue of this act shall have the seniority theretofore held by them as among themselves.

§ 4. This act shall apply to employees of the unified court system working in the tenth judicial district only.

§ 5. This act shall take effect immediately.

## APPENDIX III

### New York State Constitution
### (McKinney 1983)

#### Art. 5, § 6

**§ 6. [Civil service appointments and promotions; veterans' preference and credits]**

Appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive; provided, however, that any member of the armed forces of the United States who served therein in time of war, who is a citizen and resident of this state and was a resident at the time of his entrance into the armed forces of the United States and was honorably discharged or released under honorable circumstances from such service, shall be entitled to receive five points additional credit in a competitive examination for original appointment and two and one-half points additional credit in an examination for promotion or, if such member was disabled in the actual performance of duty in any war, is receiving disability payments therefor from the United States veterans administration, and his disability is certified by such administration to be in existence at the time of his application for appointment or promotion, he shall be entitled to receive ten points additional credit in a competitive examination for original appointment and five points additional credit in an examination for promotion. Such additional credit shall be added to the final earned rating of such member after he has qualified in an examination and shall be granted only at the time of establishment of an eligible list. No such member shall receive the additional credit granted by this section after he has received one appointment, either original entrance or promotion, from an eligible list on which he was allowed the additional credit granted by this section.

Adopted Nov. 8, 1949; amended Nov. 3, 1964, eff. Jan. 1, 1965.

## APPENDIX IV

### 64 N.Y.2d 663

LEIF BIRKELAND, as President of the Court Officers Benevolent Association of Nassau County, et al., Appellants, v STATE OF NEW YORK et al., Respondents, and VINCENT P. MALLAMO et al., Intervenors-Respondents.

Argued November 14, 1984; decided December 11, 1984

**APPEARANCES OF COUNSEL**

*Beth J. Goldmacher* and *Joseph A. Faraldo* for appellants.

*Robert Abrams*, Attorney-General (*Arnold D. Fleischer*, *Peter H. Schiff* and *Howard L. Zwickel* of counsel), for State of New York, respondent.

*Paula E. Kennedy* and *Michael Colodner* for Herbert B. Evans, as Chief Administrative Judge of the State of New York, respondent.

*Richard M. Gaba* for Vincent P. Mallamo and others, intervenors-respondents.

*Stephen J. Wiley* for Civil Service Employees Association, Inc., Local 1000,

AFSCME, and others, intervenors-respondents.

**OPINION OF THE COURT**

MEMORANDUM.

The order of the Appellate Division should be affirmed, with costs, for the reasons stated in the opinions of Justice Sol R. Dunkin, Supreme Court, Queens County, and Justice William C. Thompson at the Appellate Division.

We would emphasize that the Legislature's enactment of chapter 846 occurred in the aftermath of the reorganization of the New York State court system and was parallel with similar legislation applicable, State-wide, to the other State judicial districts. In view of this particular situation and the express finding by the Legislature that the normal competitive procedures would greatly disrupt the functioning of the State court system, the statute cannot be said to offend the constitutional mandate (NY Const. art V, § 6).

Judges JASEN, JONES, WACHTLER, MEYER, SIMONS and KAYE concur; Chief Judge COOKE taking no part.

Order affirmed, with costs, in a memorandum.