# MIGRA *v.* WARREN CITY SCHOOL DISTRICT BOARD OF EDUCATION ET AL.

No. 82–738.   Argued October 11, 1983—Decided January 23, 1984

BLACKMUN, J., delivered the opinion for a unanimous Court. WHITE, J., filed a concurring opinion, in which BURGER, C. J., and POWELL, J., joined, *post*, p. 88.

*John R. Vintilla* argued the cause for petitioner. With him on the briefs was *Francis X. Cook*.

*James L. Messenger* argued the cause for respondents. With him on the briefs were *John C. Burkholder* and *Kimball H. Carey*.*

---

*Briefs of *amici curiae* urging reversal were filed for the American Civil Liberties Union et al. by *Charles S. Sims, Burt Neuborne, Gordon Beggs,* and *Barbara Besser;* for the Edwin F. Mandel Legal Aid Clinic by *Gary H. Palm;* and for the National Education Association by *Joy L. Koletsky* and *Robert H. Chanin*.

*Stephen H. Sachs,* Attorney General of Maryland, *Diana G. Motz* and *Frederick G. Savage,* Assistant Attorneys General, and *Sheldon Elliot*

JUSTICE BLACKMUN delivered the opinion of the Court.

This case raises issues concerning the claim preclusive effect[1] of a state-court judgment in the context of a subsequent suit, under 42 U. S. C. §§ 1983 and 1985 (1976 ed., Supp. V), in federal court.

## I

Petitioner, Dr. Ethel D. Migra, was employed by the Warren (Ohio) City School District Board of Education from August 1976 to June 1979. She served as supervisor of elementary education. Her employment was on an annual basis under written contracts for successive school years.

---

*Steinbach* filed a brief for the State of Maryland et al. as *amici curiae* urging affirmance.

[1] The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred to collectively by most commentators as the doctrine of "res judicata." See Restatement (Second) of Judgments, Introductory Note before ch. 3 (1982); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4402 (1981). Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. See Restatement, *supra*, § 27. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar. See *id.*, Introductory Note before § 24.

This Court on more than one occasion has used the term "res judicata" in a narrow sense, so as to exclude issue preclusion or collateral estoppel. See, *e. g., Allen* v. *McCurry*, 449 U. S. 90, 94 (1980); *Brown* v. *Felsen*, 442 U. S. 127 (1979). When using that formulation, "res judicata" becomes virtually synonymous with "claim preclusion." In order to avoid confusion resulting from the two uses of "res judicata," this opinion utilizes the term "claim preclusion" to refer to the preclusive effect of a judgment in foreclosing litigation of matters that should have been raised in an earlier suit. For a helpful explanation of preclusion vocabulary, see Wright et al., *supra*, § 4402.

On April 17, 1979, at a regularly scheduled meeting, the Board, with all five of its members present, unanimously adopted a resolution renewing Dr. Migra's employment as supervisor for the 1979–1980 school year. Being advised of this, she accepted the renewed appointment by letter dated April 18 delivered to a member of the Board on April 23. Early the following morning her letter was passed on to the Superintendent of Schools and to the Board's President.

The Board, however, held a special meeting, called by its President, on the morning of April 24. Although there appear to have been some irregularities about the call, see Brief for Respondents 19, n., four of the five members of the Board were present. The President first read Dr. Migra's acceptance letter. Then, after disposing of other business, a motion was made and adopted, by a vote of 3 to 1, not to renew petitioner's employment for the 1979–1980 school year. Dr. Migra was given written notice of this nonrenewal and never received a written contract of employment for that year. The Board's absent member, James Culver, learned of the special meeting and of Dr. Migra's termination after he returned from Florida on April 25 where he had attended a National School Boards Convention.

Petitioner brought suit in the Court of Common Pleas of Trumbull County, Ohio, against the Board and its three members who had voted not to renew her employment. The complaint, although in five counts, presented what the parties now accept as essentially two causes of action, namely, breach of contract by the Board, and wrongful interference by the individual members with petitioner's contract of employment. The state court, after a bench trial, "reserved and continued" the "issue of conspiracy" and did not reach the question of the individual members' liability. App. 39. It ruled that under Ohio law petitioner had accepted the employment proffered for 1979–1980, that this created a binding contract between her and the Board, and that the Board's subsequent action purporting not to renew the employment

relationship had no legal effect. *Id.*, at 41–52. The court awarded Dr. Migra reinstatement to her position and compensatory damages. *Id.*, at 52. Thereafter, petitioner moved the state trial court to dismiss without prejudice "the issue of the conspiracy and individual board member liability." *Id.*, at 53. That motion was granted. *Id.*, at 54. The Ohio Court of Appeals, Eleventh District, in an unreported opinion, affirmed the judgment of the Court of Common Pleas. Review was denied by the Supreme Court of Ohio.[2]

In July 1980, Dr. Migra filed the present action in the United States District Court for the Northern District of Ohio against the Board, its then individual members, and the Superintendent of Schools. *Id.*, at 3. Her complaint alleged that she had become the director of a commission appointed by the Board to fashion a voluntary plan for the desegregation of the District's elementary schools; that she had prepared a social studies curriculum; that the individual defendants objected to and opposed the curriculum and resisted the desegregation plan; that hostility and ill will toward petitioner developed; and that, as a consequence, the individual defendants determined not to renew petitioner's contract of employment. *Id.*, at 5–6. Many of the alleged facts had been proved in the earlier state-court litigation. Dr. Migra claimed that the Board's actions were intended to punish her for the exercise of her First Amendment rights. She also claimed that the actions deprived her of property without due process and denied her equal protection. Her federal claim

---

[2] It is apparent, from the foregoing recital of facts and of events that took place in the state-court litigation, that the cause of action for reinstatement and for damages was brought to a conclusion in the Ohio courts, but that the cause of action sounding in tort, that is, for wrongful interference with petitioner's contract of employment, was not. Instead, that cause of action was "reserved and continued," evidently by the state trial court *sua sponte*, and was eventually dismissed without prejudice upon petitioner's motion. This dismissal was subsequent to the entry of judgment on the breach-of-contract cause of action.

thus arose under the First, Fifth, and Fourteenth Amendments and 42 U. S. C. §§ 1983 and 1985 (1976 ed., Supp. V). She requested injunctive relief and compensatory and punitive damages. App. 11–12. Answers were filed in due course and shortly thereafter the defendants moved for summary judgment on the basis of res judicata and the bar of the statute of limitations. *Id.*, at 13–24.

The District Court granted summary judgment for the defendants and dismissed the complaint. App. to Pet. for Cert. C–17—C–31, D–32. The United States Court of Appeals for the Sixth Circuit, by a short unreported order, affirmed. *Id.*, at A–15. See 703 F. 2d 564 (1982).[3] Because of the importance of the issue, and because of differences among the Courts of Appeals, see n. 6, *infra,* we granted certiorari. 459 U. S. 1102 (1983).

## II

The Constitution's Full Faith and Credit Clause[4] is implemented by the federal full faith and credit statute, 28 U. S. C. § 1738. That statute reads in pertinent part:

> "Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

---

[3] Respondents tell us that after petitioner's favorable judgment in the state court was affirmed by the Ohio Court of Appeals, with review denied by the Supreme Court of Ohio, the Board gave Dr. Migra backpay for the 1979–1980 school year reduced by the amount of unemployment compensation she had received for that period. Brief for Respondents 1–2; Tr. of Oral Arg. 23.

[4] "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U. S. Const., Art. IV, § 1.

It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered. In *Allen* v. *McCurry*, 449 U. S. 90 (1980), this Court said:

> "Indeed, though the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so. . . ." *Id.*, at 96.

This principle was restated in *Kremer* v. *Chemical Construction Corp.*, 456 U. S. 461 (1982):

> "Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Id.*, at 466.

See also *Haring* v. *Prosise*, 462 U. S. 306 (1983). Accordingly, in the absence of federal law modifying the operation of § 1738, the preclusive effect in federal court of petitioner's state-court judgment is determined by Ohio law.

In *Allen*, the Court considered whether 42 U. S. C. § 1983 modified the operation of § 1738 so that a state-court judgment was to receive less than normal preclusive effect in a suit brought in federal court under § 1983. In that case, the respondent had been convicted in a state-court criminal proceeding. In that proceeding, the respondent sought to suppress certain evidence against him on the ground that it had been obtained in violation of the Fourth Amendment. The trial court denied the motion to suppress. The respondent then brought a § 1983 suit in federal court against the officers who had seized the evidence. The District Court held the suit barred by collateral estoppel (issue preclusion) because

the issue of a Fourth Amendment violation had been resolved against the respondent by the denial of his suppression motion in the criminal trial. The Court of Appeals reversed. That court concluded that, because a § 1983 suit was the respondent's only route to a federal forum for his constitutional claim,[5] and because one of § 1983's underlying purposes was to provide a federal cause of action in situations where state courts were not adequately protecting individual rights, the respondent should be allowed to proceed to trial in federal court unencumbered by collateral estoppel. This Court, however, reversed the Court of Appeals, explaining:

> "[N]othing in the language of § 1983 remotely expresses any congressional intent to contravene the common-law rules of preclusion or to repeal the express statutory requirements of the predecessor of 28 U. S. C. § 1738 . . . . Section 1983 creates a new federal cause of action. It says nothing about the preclusive effect of state-court judgments.
>
> "Moreover, the legislative history of § 1983 does not in any clear way suggest that Congress intended to repeal or restrict the traditional doctrines of preclusion. . . . [T]he legislative history as a whole . . . lends only the most equivocal support to any argument that, in cases where the state courts have recognized the constitutional claims asserted and provided fair procedures for determining them, Congress intended to override § 1738 or the common-law rules of collateral estoppel and res judicata. Since repeals by implication are disfavored . . . much clearer support than this would be required to hold that § 1738 and the traditional rules of preclusion are not applicable to § 1983 suits." 449 U. S., at 97–99.

---

[5] The respondent had not asserted that the state courts had denied him a "full and fair opportunity" to litigate his search and seizure claim; he therefore was barred by *Stone* v. *Powell,* 428 U. S. 465 (1976), from seeking a writ of habeas corpus in federal district court.

*Allen* therefore made clear that issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered.

The Court in *Allen* left open the possibility, however, that the preclusive effect of a state-court judgment might be different as to a federal issue that a § 1983 litigant could have raised but did not raise in the earlier state-court proceeding.[6] 449 U. S., at 97, n. 10. That is the central issue to be resolved in the present case. Petitioner did not litigate her § 1983 claim in state court, and she asserts that the state-court judgment should not preclude her suit in federal court simply because her federal claim could have been litigated in the state-court proceeding. Thus, petitioner urges this Court to interpret the interplay of § 1738 and § 1983 in such a way as to accord state-court judgments preclusive effect in § 1983 suits only as to issues actually litigated in state court.

It is difficult to see how the policy concerns underlying § 1983 would justify a distinction between the issue preclusive and claim preclusive effects of state-court judgments. The argument that state-court judgments should have less preclusive effect in § 1983 suits than in other federal suits is based on Congress' expressed concern over the adequacy of

---

[6] Most federal courts that have faced this question have ruled that claim preclusion is applicable to a § 1983 action. See *Isaac* v. *Schwartz*, 706 F. 2d 15 (CA1 1983); *Nilsen* v. *City of Moss Point*, 701 F. 2d 556 (CA5 1983); *Castorr* v. *Brundage*, 674 F. 2d 531 (CA6), cert. denied, 459 U. S. 928 (1982); *Lee* v. *City of Peoria*, 685 F. 2d 196 (CA7 1982); *Robbins* v. *District Court of Worth County, Iowa*, 592 F. 2d 1015 (CA8), cert. denied, 444 U. S. 852 (1979); *Scoggin* v. *Schrunk*, 522 F. 2d 436 (CA9 1975), cert. denied, 423 U. S. 1066 (1976); *Spence* v. *Latting*, 512 F. 2d 93 (CA10), cert. denied, 423 U. S. 896 (1975). Some appear to have decided otherwise. See *Lombard* v. *Board of Ed. of City of New York*, 502 F. 2d 631 (CA2 1974), cert. denied, 420 U. S. 976 (1975); *New Jersey Education Assn.* v. *Burke*, 579 F. 2d 764 (CA3), cert. denied, 439 U. S. 894 (1978).

For comment as to federal-state comity considerations, see Currie, Res Judicata: The Neglected Defense, 45 U. Chi. L. Rev. 317 (1978).

state courts as protectors of federal rights. See, *e. g.*, *Mitchum* v. *Foster*, 407 U. S. 225, 241–242 (1972). *Allen* recognized that the enactment of § 1983 was motivated partially out of such concern, 449 U. S., at 98–99, but *Allen* nevertheless held that § 1983 did not open the way to relitigation of an issue that had been determined in a state criminal proceeding. Any distrust of state courts that would justify a limitation on the preclusive effect of state judgments in § 1983 suits would presumably apply equally to issues that actually were decided in a state court as well as to those that could have been. If § 1983 created an exception to the general preclusive effect accorded to state-court judgments, such an exception would seem to require similar treatment of both issue preclusion and claim preclusion. Having rejected in *Allen* the view that state-court judgments have no issue preclusive effect in § 1983 suits, we must reject the view that § 1983 prevents the judgment in petitioner's state-court proceeding from creating a claim preclusion bar in this case.

Petitioner suggests that to give state-court judgments full issue preclusive effect but not claim preclusive effect would enable litigants to bring their state claims in state court and their federal claims in federal court, thereby taking advantage of the relative expertise of both forums. Although such a division may seem attractive from a plaintiff's perspective, it is not the system established by § 1738. That statute embodies the view that it is more important to give full faith and credit to state-court judgments than to ensure separate forums for federal and state claims. This reflects a variety of concerns, including notions of comity, the need to prevent vexatious litigation, and a desire to conserve judicial resources.

In the present litigation, petitioner does not claim that the state court would not have adjudicated her federal claims had she presented them in her original suit in state court. Alternatively, petitioner could have obtained a federal forum for

her federal claim by litigating it first in a federal court.[7] Section 1983, however, does not override state preclusion law and guarantee petitioner a right to proceed to judgment in state court on her state claims and then turn to federal court for adjudication of her federal claims. We hold, therefore, that petitioner's state-court judgment in this litigation has the same claim preclusive effect in federal court that the judgment would have in the Ohio state courts.

## III

It appears to us that preclusion law in Ohio has experienced a gradual evolution, and that Ohio courts recently have applied preclusion concepts more broadly than in the past. For example, in *Vasu* v. *Kohlers, Inc.*, 145 Ohio St. 321, 61 N. E. 2d 707 (1945), a plaintiff who suffered both personal injury and property damages in an automobile accident was held entitled to maintain a separate suit against the defendant for each type of injury. The theory was that "[i]njuries to both person and property suffered by the same person as a result of the same wrongful act are infringements of different rights and give rise to distinct causes of action . . . ." *Id.*, at

---

[7] The author of this opinion was in dissent in *Allen*. The rationale of that dissent, however, was based largely on the fact that the § 1983 plaintiff in that case first litigated his constitutional claim in state court in the posture of his being a *defendant* in a criminal proceeding. See 449 U. S., at 115–116. In this case, petitioner was in an offensive posture in her state-court proceeding, and could have proceeded first in federal court had she wanted to litigate her federal claim in a federal forum.

In the event that a § 1983 plaintiff's federal and state-law claims are sufficiently intertwined that the federal court abstains from passing on the federal claims without first allowing the state court to address the state-law issues, the plaintiff can preserve his right to a federal forum for his federal claims by informing the state court of his intention to return to federal court on his federal claims following litigation of his state claims in state court. See, *e. g., England* v. *Louisiana State Board of Medical Examiners*, 375 U. S. 411 (1964).

321, 61 N. E. 2d, at 709 (syllabus ¶4).[8]  In *Rush* v. *Maple Heights*, 167 Ohio St. 221, 147 N. E. 2d 599 (1958), however, the Supreme Court of Ohio specifically overruled "[p]aragraph four of the syllabus in the *[Vasu]* case." *Id.*, at 221, 235, 147 N. E. 2d, at 599, 607.  The new approach was declared to be more in accord with "modern practice," *id.*, at 235, 147 N. E. 2d, at 607, and was adopted in the hope that it might reduce "much of the vexatious litigation, with its attendant confusion, which has resulted in recent years from the filing of separate petitions by the same plaintiff, one for personal injuries and one for property damage although sustained simultaneously." *Id.*, at 234–235, 147 N. E. 2d, at 607.

This holding, of course, did not fully solve for the Ohio law the question as to what constitutes a "cause of action" for claim preclusion purposes.  The definition of "cause of action" or "claim" is critical in the present context because it seems that a basic rule of Ohio law is that a person is entitled to one lawsuit for each "cause of action" he possesses.  *Norwood* v. *McDonald*, 142 Ohio St. 299, 52 N. E. 2d 67 (1943); *Whitehead* v. *General Tel. Co.*, 20 Ohio St. 2d 108, 254 N. E. 2d 10 (1969).

In 1968, the Supreme Court of Ohio twice dealt with the question of what constitutes a cause of action for preclusion purposes.  *Henderson* v. *Ryan*, 13 Ohio St. 2d 31, 233 N. E. 2d 506; *Sharp* v. *Shelby Mut. Ins. Co.*, 15 Ohio St. 2d 134, 239 N. E. 2d 49.  In each of these cases, although a second action against the defendant was permitted, the court clearly was developing a broader and more expansive attitude toward claim preclusion.  See *Henderson*, 13 Ohio St. 2d, at 35, 38, 233 N. E. 2d, at 509–511; *Sharp*, 15 Ohio St. 2d, at 140, 239 N. E. 2d, at 54.  In addition, the Ohio Supreme

---

[8] Except for *per curiam* opinions, the Ohio Supreme Court speaks as a court only through the syllabi of its cases.  *Cassidy* v. *Glossip*, 12 Ohio St. 2d 17, 18, 24, 231 N. E. 2d 64, 65, 68 (1967).  See *Ohio* v. *Gallagher*, 425 U. S. 257, 259 (1976); *Beck* v. *Ohio*, 379 U. S. 89, 93, and n. 2 (1964); *Perkins* v. *Benguet Mining Co.*, 342 U. S. 437, 441, and n. 3 (1952).

Court in 1970 adopted Rule 13 of the Ohio Rules of Civil Procedure establishing a compulsory counterclaim provision like its federal counterpart in Rule 13 of the Federal Rules of Civil Procedure.

Then, in 1982, the Supreme Court of Ohio adopted what appears to be a broad doctrine of preclusion indeed, although in a defensive, not offensive, context. *Johnson's Island, Inc.* v. *Board of Township Trustees*, 69 Ohio St. 2d 241, 431 N. E. 2d 672. The first syllabus by the court recites:

> "When in a prior injunction action brought to enjoin the defendant landowner's violation of a zoning law, the defendant asserts the affirmative defense of nonconforming use, but does not assert the unconstitutionality of the law, the landowner is, on the principle of *res judicata*, barred from later bringing a declaratory judgment action alleging such law to be unconstitutional." *Ibid.*, 431 N. E. 2d, at 673.

See also *Stromberg* v. *Board of Ed. of Bratenahl*, 64 Ohio St. 2d 98, 413 N. E. 2d 1184 (1980).

In reading the opinion of the District Court in the present litigation, we are unable to determine whether that court was applying what it thought was the Ohio law of preclusion. The opinion cites a Sixth Circuit opinion that purported to enunciate Ohio law, *Coogan* v. *Cincinnati Bar Assn.*, 431 F. 2d 1209 (1970), and also relied on precedents from other Federal Courts of Appeals applying both federal and state law. Our holding today makes clear that Ohio state preclusion law is to be applied to this case. Prudence also dictates that it is the District Court, in the first instance, not this Court, that should interpret Ohio preclusion law and apply it.

The judgment of the Court of Appeals, accordingly, is vacated, and the case is remanded to that court so that it may instruct the District Court to conduct such further proceedings as are required by, and are consistent with, this opinion.

*It is so ordered.*

JUSTICE WHITE, with whom THE CHIEF JUSTICE and JUSTICE POWELL join, concurring.

In *Union & Planters' Bank* v. *Memphis*, 189 U. S. 71, 75 (1903), this Court held that a federal court "can accord [a state judgment] no greater efficacy" than would the judgment-rendering State. That holding has been adhered to on at least three occasions since that time. *Oklahoma Packing Co.* v. *Oklahoma Gas & Electric Co.*, 309 U. S. 4, 7–8 (1940); *Wright* v. *Georgia Railroad & Banking Co.*, 216 U. S. 420, 429 (1910); *City of Covington* v. *First National Bank*, 198 U. S. 100, 107–109 (1905). The Court has also indicated that the States are bound by a similar rule under the Full Faith and Credit Clause. *Public Works* v. *Columbia College*, 17 Wall. 521, 529 (1873). The Court is thus justified in this case to rule that preclusion must be determined under state law, even if there would be preclusion under federal standards.

This construction of 28 U. S. C. § 1738 and its predecessors is unfortunate. In terms of the purpose of that section, which is to require federal courts to give effect to state-court judgments, there is no reason to hold that a federal court may not give preclusive effect to a state judgment simply because the judgment would not bar relitigation in the state courts. If the federal courts have developed rules of res judicata and collateral estoppel that prevent relitigation in circumstances that would not be preclusive in state courts, the federal courts should be free to apply them, the parties then being free to relitigate in the state courts. The contrary construction of § 1738 is nevertheless one of long standing, and Congress has not seen fit to disturb it, however justified such an action might have been.

Accordingly, I join the opinion of the Court.