Lisa McWILLIAMS, Plaintiff-Appellant,

v.

Keith McWILLIAMS and Don G. Humble, In His Individual and Official Capacity, Defendants-Appellees.

No. 85–1396.

United States Court of Appeals, Fifth Circuit.

Dec. 3, 1986.

Bruce V. Griffiths, Houston, Tex., for plaintiff-appellant.

Mitchell J. Green, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for Don G. Humble and Keith McWilliams.

Rex D. Davis, Waco, Tex., for Keith McWilliams.

Before WISDOM, RUBIN, and HIGGINBOTHAM, Circuit Judges.

WISDOM, Circuit Judge:

No court can provide a tidy ending to the sad happenings that gave rise to this lawsuit.

The plaintiff, Mrs. Lisa McWilliams, filed this suit for declaratory and injunctive relief under 42 U.S.C. § 1983 alleging that enforcement of the custody provisions of a divorce decree rendered in a state divorce proceeding deny her rights guaranteed by the First and Fourteenth Amendments. The defendants are her former husband, Keith McWilliams, and Judge Don G. Humble, who presided over her divorce proceedings. On a motion to dismiss under Fed.R. Civ.P. 12(b)(6), the district court dismissed the plaintiff's complaint. The district court concluded that it lacked jurisdiction under the *Rooker-Feldman*[1] doctrine and, alter-

---

1. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

natively, that the *Younger v. Harris*[2] doctrine required it to abstain. We find it unnecessary to discuss the applicability of those doctrines to this case. The plaintiff's action is barred by the claim-preclusive effect of the judgment in the Texas courts.[3]

The final judgment in the divorce proceeding appointed the husband as the "Managing Conservator" (custodial parent) of the McWilliams children and restricted the wife's rights as "Possessory Conservator", decreeing that she "shall not take the children, nor permit them to be taken to the Endtime Evangelistic Pentecostal Church, Bryan Texas". Six months earlier the trial judge had imposed a similar restriction on Mrs. McWilliams's visitation rights when he appointed her Temporary Possessory Conservator. The church has a black pastor, is in what is known as a "black neighborhood", and the members of the congregation are almost all blacks. Mrs. McWilliams had regularly taken the children with her to the Endtime Evangelistic Pentecostal Church. The transcript of the testimony is replete with racial references manifestly intended to prejudice judge and jury against Mrs. McWilliams. Counsel for Mrs. McWilliams made no objection to the admissibility of any testimony.

The jury returned a finding on a single special issue: "[H]aving due regard for the best interests of the children", Keith McWilliams should be appointed "managing conservator" of the children. The trial judge accepted the finding, incorporated it in the judgment, and appointed Mr. McWilliams as Managing Conservator of the children.

Counsel for Mrs. McWilliams filed no motion for reconsideration, no motion for a new trial, and took no appeal. The judg- ment in the divorce suit was filed August 31, 1982.

April 25, 1984, the Supreme Court decided *Palmore v. Sidoti*, 466 U.S. 429, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984). In *Palmore* a Florida circuit court removed a child from her white mother's custody and awarded custody to the father, because the divorced mother cohabitated with and later married a black. The Florida District Court of Appeals affirmed, without opinion, unquestionably concluding, as had the trial court, that there would be a damaging impact on the child if she remained in a racially mixed household. In the United States Supreme Court, Chief Justice Burger, writing for a unanimous court, recognized that the "goal of granting custody based on the best interests of the child is indisputably a substantial government interest for purposes of the Equal Protection Clause".[4] Notwithstanding, the Supreme Court reversed the judgment of the Florida District Court of Appeals, holding that "the reality of private biases and the possible injury they might inflict are [not] permissible considerations for removal of an infant child from the custody of its natural mother".[5]

Although *Palmore*, unlike the instant case, had gone through the state court appellate system, Lisa McWilliams undoubtedly relied on *Palmore* when she filed her complaint in the federal court on October 26, 1984. In that complaint she alleged: "[T]he deprivation of Plaintiff's rights and liberties, as explained herein, was brought to the attention of Defendant [Judge] Humble in a timely fashion. However, Defendant Humble ignored Plaintiff's request that the decree be entered in accordance with the state and federal constitutions." A careful search of the record in

---

**2.** 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

**3.** In *Migra v. Warren City School Dist. Bd. of Education,* 465 U.S. 75, 77 n. 1, 79 L.Ed.2d 56, 59 n. 1, 104 S.Ct. 892, 894 n. 1, the court dropped the terms "res judicata" and "collateral estoppel" for the more precise Restatement terms "claim preclusion" and "issue preclusion". In *Migra,* as explained in footnote 1, Justice Blackmun's opinion "utilizes the term 'claim preclusion' to refer to the preclusive effect of a judgment in foreclosing relitigation of matters that should have been raised in an earlier suit". We adhere to that use in this opinion.

**4.** 466 U.S. at 433, 104 S.Ct. at 1882, 80 L.Ed.2d at 426.

**5.** *Id.*

the state suit fails to show that counsel for Mrs. McWilliams mentioned constitutional issues or brought any constitutional issue to the attention of the trial judge. In any event, the preclusive effect of a judgment applies to issues that could be raised as well as to those which were raised in the earlier litigation.

Under the full faith and credit clause of the Constitution[6] and 28 U.S.C. § 1738[7], a federal court must give to a state court the same preclusive effect that a court of the state in which the judgment was rendered would give it. *Kremer v. Chemical Construction Corp.*,[8] see also *Haring v. Prosise.*[9] *Allen v. McCurry*[10] applied the principle to issues actually litigated, but left open the possibility that the preclusive effect of a state-court judgment might be different in a section 1983 action as to a federal issue that a § 1983 litigant could have raised but did not raise in the earlier state proceeding. That was "the central issue" in the important case of *Migra v. Warren City School District Board of Education.*[11] In that decision the Supreme Court makes it clear that section 1983 is not an exception to section 1738: "the concerns underlying § 1983 would [not] justify a distinction between the issue-preclusive and the claim-preclusive effects of state-

court judgments".[12] The Full Faith and Credit Clause "allows the States to determine ... the preclusive effect of judgments in their own courts". *Marrese v. American Academy of Orthopedic Surgeons,*[13] reaffirming *Migra;* see also *Parsons Steel v. First Alabama Bank.*[14] As expressed in *Kremer,* section 1738 "goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken".[15]

This Court recently reviewed the law of Texas on res judicata.

We conclude therefore that "a different cause of action" is one that proceeds not only on a sufficiently different legal theory but also on a different factual footing as not to require the trial of facts material to the former suit; that is, an action that can be maintained even if all the disputed factual issues raised in the plaintiff's original complaint are conceded in the defendant's favor.[16]

Looking at the plaintiff's federal claim for what it really is, it is one for the custody of the McWilliams children, a matter that was purportedly put to rest in appropriate proceedings in the appropriate forum, subject to review by the Texas appellate courts. The parties in the federal action are not identical with those in the

6. U.S. Const. art. IV, § 1 provides:
   Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

7. 28 U.S.C. § 1738 (1982). Section 1738 provides:
   The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.
   The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certification of a judge of the court that the said attestation is in proper form.

8. 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

9. 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983).

10. 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

11. 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

12. *Id.* at 83, 104 S.Ct. at 897, 79 L.Ed.2d at 63.

13. 470 U.S. 373, 380, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274, 281 (1985).

14. —— U.S. ——, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986).

15. 456 U.S. at 482, 102 S.Ct. at 1898, 72 L.Ed.2d at 280.

16. *Flores v. Edinburg Consolidated Independent School Dist.,* 741 F.2d 773, 777 (5th Cir.1984).

state action. The husband is not a proper party under Section 1983, for his participation in the divorce proceedings did not constitute state action. And Judge Humble was not a party in the state litigation. The real parties at interest, however, are Mr. and Mrs. McWilliams. There is a difference in issues in the two proceedings, but only because counsel for Mrs. McWilliams failed to present the constitutional issues in the state court. He had a number of opportunities to make those contentions. The first opportunity came when Judge Humble issued his pretrial temporary custody order. His next came during the trial, but he made no objection to the racial considerations brought out in the testimony. After the trial judge rendered his judgment, counsel filed no motion for reconsideration or for modification of the custody provision of the order or for a new trial. Finally, Mrs. McWilliams did not appeal. We cannot but observe that this failure to urge constitutional issues in the state proceedings is astonishing, especially since the custody provision prohibiting Mrs. McWilliams from taking her children to her church seems, arguably, a facial violation of the First, Thirteenth, and Fourteenth Amendments.

The tension between, on the one hand, Section 1983, and on the other hand, the *Rooker-Feldman* doctrine, the *Younger v. Harris* doctrine, and res judicata, in a narrow or broad sense, has caused us to consider this case in far greater depth than is reflected in this brief opinion. In adopting the Civil Rights Act of 1871, now Section 1983, Congress intended to change the relationship between the States and the Nation in the protection of federally created and federally protected rights. Congress realized that some state officers, including judges, might be antipathetic to those rights. This antipathy may be a product of a conscious or subconscious identification of the trial judge with community mores. We are confident that the trial judge in this case, like the trial judge in *Palmore*, conscientiously concluded that the best interests of the children lay in awarding their custody to the father. Yet, in *Palmore* the

Supreme Court decided that the best interests of the children must yield to the overriding national policy of eradicating racial discrimination. And here we also have First Amendment concerns. The same constitutional infirmity exists in the *McWilliams* custody decree that existed in the *Palmore* decree, but the holding in *Migra*, the procedural posture of the *McWilliams* case, and the difference between an inferior court and the United States Supreme Court effectively eliminate options in our decision-making function. We must honor the claim-preclusive effect of the state court's judgment, regardless of Section 1983.

We dismiss the plaintiff's complaint. In the light of *Flores*, we see no reason to remand the case to the district court for it to reexamine the law of Texas on the claim-preclusive effects of state court judgments. The district court's judgment of dismissal is AFFIRMED.