Judge Jim SCOTT, Plaintiff–Appellant,

v.

**FORT BEND COUNTY, et al.,
Defendants–Appellees.**

**No. 88–2732
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

March 7, 1989.
Rehearing Denied April 10, 1989.

---

James Morgan Scott, Jr., Sugas Land, Tex., for plaintiff-appellant.

Jim Scott, Houston, Tex., pro se.

Larry J. Doherty, Houston, Tex., for defendants-appellees.

Before RUBIN, GARWOOD, and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A Texas state Justice of the Peace who had been removed from office pursuant to a provision of the Texas Constitution lost his Texas state court suit to regain his office. He then asserted in federal district court that his removal from office denied him due process under the U.S. Constitution. The district court rendered summary judgment dismissing the federal suit on the basis that the claim was barred by collateral estoppel arising from the prior state litigation. While we find that the collateral-estoppel defense was not well founded because the factual issue raised in this suit had not been adjudicated in state court, we affirm the district court judgment because the Texas judgment is res judicata.

## I.

Article XVI, section 65, of the Texas Constitution provides that if persons holding certain elected positions, including that of Justice of the Peace,

> shall announce their candidacy, or shall in fact become a candidate, in any General, Special or Primary Election, for any office ... other than the office then held, at any time when the unexpired term of

the office then held shall exceed one (1) year, such announcement or such candidacy shall constitute an automatic resignation of the office then held, and the vacancy thereby created shall be filled pursuant to law in the same manner as other vacancies for such office are filled.

Jim Scott was elected Justice of the Peace in Fort Bend County, Texas, for a four-year term beginning January 1, 1983. On September 10, 1985, when more than a year was left in his term, Scott filed a Designation of Campaign Treasurer with the County Clerk of Fort Bend County indicating that he was a candidate seeking election for the office of County Court at Law No. 2. On September 11, 1985, during a phone conversation that he knew was being recorded, Scott told a reporter that he would be running for that office. The interview was broadcast by radio later that day. Immediately thereafter, the County Commissioners, who are among the defendants in this action, asserted that, according to the Texas Constitution, Scott had announced his candidacy for election and thereby resigned from office. Exercising their power to fill vacancies, the commissioners then appointed James C. Adolphus as Scott's replacement. Scott promptly filed suit against Adolphus in a Texas district court to try title to the office.

At the time Scott filed the Designation of Campaign Treasurer, the Texas election code defined "candidate" as follows:

(1) "Candidate" is defined as any person who has knowingly and willingly taken affirmative action for the purpose of seeking nomination or election to any public office which is required by law to be determined by an election. Some examples of affirmative action are:....

(D) Public announcement of a definite intent to run for office at a particular election, either with or without designating the specific office to be sought.

(E) Statement of definite intent and solicitation of support through letters or other modes of communication, prior to a public announcement....

(H) Filing of a designation of a campaign treasurer.[1]

In the state proceeding, Scott argued that he had not announced his candidacy, and that, even if he had, he had withdrawn the announcement before it was accepted. He further claimed that the Commissioners did not have jurisdiction to remove him from office, arguing that Texas law gives him the right to have a jury determine whether he had resigned. Scott also alleged that the Commissioners and other Fort Bend County officials disliked him and had caused him to be removed because, *inter alia,* he had refused to "fix" their traffic tickets.

The state trial court granted summary judgment against Scott, and the court of appeals affirmed, holding that there was no dispute over facts that made Scott a candidate as a matter of law. The court found that Scott had not denied having filed the Designation of Campaign Treasurer or having made the recorded statements to the reporter, and that he had not denied that there was more than one year left in his term of office. The court further held that once the automatic-resignation provision of the Texas Constitution was triggered, no withdrawal could be effective. Finally, the court held that Scott could not complain of the Commissioners' jurisdiction to remove him from office because Scott had removed himself from office when he announced his candidacy. The Texas Supreme Court denied Scott's application for a writ of error, and the mandate was issued on the final judgment by the court of appeals on March 21, 1988.

During the pendency of the state-court proceedings, Scott sued Fort Bend County, the Commissioners, the district attorney, the assistant district attorney, and the County judge in federal court under 42 U.S.C. §§ 1983, 1985, and 1986. He asserted the same claim he had made in his state-court complaint and that the defen-

---

1. Tex.Elec.Code Ann. § 251.001 (Vernon 1986). (This section has since been amended and now provides that the filing of a Designation of Campaign Treasurer does not constitute an announcement of candidacy for purposes of the automatic-resignation provision.

dants' actions to remove him from office deprived him of a property right without notice and a hearing, thereby violating his right to due process under the U.S. Constitution. He also claimed that the automatic-resignation provision is unconstitutionally vague and that it was unconstitutionally applied to him.

After a hearing on defendants' motion to dismiss, the district court, in an order of final judgment, granted the motion, and Scott appealed. Because the district court had not provided Scott with notice that it intended to treat the defendants' motion to dismiss as one for summary judgment, this court remanded the case to give Scott an opportunity to rebut the defendants' contentions.

As anticipated, the defendants subsequently filed a motion for summary judgment arguing, *inter alia*, that the dispositive issues in the federal cause of action have been decided and are precluded by the judgment in the state court. The district court granted summary judgment, holding that issue preclusion required that the federal cause of action be dismissed.

## II.

█ State judicial proceedings are due the same credit in a federal court that they are entitled to by law or usage in the courts of the state.[2] Accordingly, a federal court must give a state-court judgment the same preclusive effect that it would have under the law of the state in which the judgment was rendered, even when the basis of the federal claim is the Civil Rights Act.[3]

█ Under Texas law, collateral estoppel or issue preclusion prevents the relitigation of issues actually litigated and essential to

the judgment in the prior suit.[4] Insofar as Scott is challenging the factual findings of the state court or that court's interpretation of the applicable Texas law, Scott is therefore precluded from relitigating those issues in federal court. In his federal claim, however, Scott also contends that the automatic-resignation provision, at least as it applied in his case, violated the U.S. Constitution. This issue was not actually litigated, nor was it essential to the judgment, in the state court. Consequently, collateral estoppel does not preclude this claim.

█ The defendants also invoked res judicata. Under Texas law, res judicata bars litigation of all issues connected with a cause of action that might, with due diligence, have been raised in the former action between the same parties or their privies.[5] As the district court found, the defendants in this case are in privity with the defendant judge in the state proceeding. "Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right."[6] Although the judge who succeeded Scott was named as the defendant in the state-court action, the action was a direct challenge to the actions of the Commissioners who appointed the judge to replace Scott. The successor judge's rights in the action were entirely dependent on the legality of his appointment by the County Commissioners.

Moreover, given the nature of Scott's claim, res judicata applies even if the defendants in both actions are not identical. This case is analogous to *McWilliams* in which a Texas court awarded custody of the McWilliams' children to their father.

**2.** 28 U.S.C. § 1738; *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 80–81, 104 S.Ct. 892, 895–96, 79 L.Ed.2d 56 (1984).

**3.** *Migra,* 465 U.S. at 81, 83–84, 104 S.Ct. at 897–98; *McWilliams v. McWilliams,* 804 F.2d 1400, 1402 (5th Cir.1986).

**4.** *J.M. Muniz, Inc. v. Mercantile Texas Credit Corp.,* 833 F.2d 541, 544 (5th Cir.1987); *Employers Casualty Co. v. Block,* 744 S.W.2d 940, 943

(Tex.1988); *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984).

**5.** *Flores v. Edinburg Consolidated Independent School District,* 741 F.2d 773, 776 (5th Cir.1984) (citing *Abbott Laboratories v. Gravis,* 470 S.W.2d 639, 642 (Tex.1971)); *Bonniwell,* 663 S.W.2d at 818.

**6.** *Gorelick v. Harrison County,* 720 S.W.2d 835, 836 (Tex.Ct.App.1986).

The judge decreed that the mother, who was white, was forbidden to attend services with the children at her predominantly black church. Mrs. McWilliams thereafter filed a suit in the federal court against the judge under 42 U.S.C. § 1983, alleging the denial of rights guaranteed by the First and Fourteenth Amendments. This court noted that, although the parties were not identical, res judicata would apply because both suits were essentially identical; they were suits to determine custody of the McWilliams' children.[7] Because counsel for Mrs. McWilliams had never asserted any constitutional claims in the state courts, despite several opportunities to do so, the claims were barred in the federal court.

■ Similarly, although the parties are technically different, Scott's federal suit asserts essentially the same cause of action he relied on in the state proceeding. The federal claim seeks a determination of Scott's rights in the office of Justice of the Peace—a matter purportedly put to rest in the state court. The factual basis of the two lawsuits is identical and, as in *McWilliams*, "[t]here is a difference in issues in the two proceedings, but only because [the plaintiff] failed to present the constitutional issues in the state court."[8] Scott's challenges to the constitutionality of the automatic-resignation provision and its application to his situation could have been raised in the state court proceeding. His failure to do so bars litigation of those claims in this subsequent federal court action.

For these reasons, the summary judgment is AFFIRMED.

---

**7.** *McWilliams,* 804 F.2d at 1402–03.

**8.** *Id.* at 1403.