**Billy Ray EUBANKS,**
**Plaintiff–Appellant,**

v.

**GETTY OIL COMPANY, et al.,**
**Defendants–Appellees.**

No. 89–3268.

United States Court of Appeals,
Fifth Circuit.

March 22, 1990.

Charles K. Reasonover, Duris L. Holmes, Deutsch, Kerrigan & Stiles, New Orleans, La., John M. Grower, Jackson, Miss., for plaintiff-appellant.

Robert E. Fuller, Texaco, Inc., White Plains, N.Y., Richard S. Pabst, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, Joseph Wilkinson, Joseph N. Mole, New Orleans, La., for defendants-appellees.

Before CLARK, Chief Judge, and RUBIN and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

In this case we are called upon to decide whether a decision of an Alabama court upholding a state agency's order unitizing a gas field operates as a collateral estoppel to preclude appellant's antitrust claim.

## I. *Facts and Prior Proceedings*

Appellant Eubanks owns an 8.333 percent working interest in a gas/condensate well in the Hatter's Pond Field in Mobile County, Alabama.[1] Texaco, Inc., successor to Getty Oil Co., owns approximately 95 percent of the total working interest in the field.[2] Texaco currently operates all the wells in the field.

On May 31, 1982, Getty petitioned the Alabama State Oil and Gas Board (the "Board") for unitization of the Hatter's Pond gas field. Getty claimed unitization was necessary to effect secondary recovery of gas from the field. The Board has its own staff of geologists and petroleum engineers and makes decisions based on independent analyses of geological data submitted by well operators. The Board conducted hearings on Getty's unitization plan. Several owners of interests in the field, including appellant, challenged Getty's proposed participation formula. Appellant and others also objected to Getty's proposed inclusion of their properties in the unit. In July, 1983, the Board rejected Getty's unitization petition and directed Getty to develop a different participation formula.

Getty filed a second unitization petition in February, 1984. The Board held additional hearings. Appellant and others again objected, this time claiming that Getty was withholding relevant documents from the Board. Appellant asked the Board to compel further discovery.

Because Getty operated most or all of the wells in the field, Getty was in possession of virtually all of the geological data about the field. The Board initially refused to permit appellant to conduct discovery of Getty's files. An Alabama Circuit Court eventually issued a writ of mandamus requiring the Board to permit such discovery. Getty responded by producing files that appellant claims were "sanitized." Further, these files contained three documents that appellant claims indicated that other documents that Getty had removed from the files would prove that appellant's well should not have been included in the unit. These non-disclosed documents were the subject of appellant's request for additional discovery. Getty claims that the documents appellant sought were "confidential, internal, interpretive [sic] evaluations." Getty claims that the raw data underlying these interpretative documents had been provided to the Board. In fact, it appears that "thousands" of pages of documents had been produced.

On October 9, 1984, the Board granted Getty's petition for unitization. The Board also rejected appellant's request for additional discovery, noting that:

[T]he Board has been provided with ample information and sufficient data to make a decision on the Petitions presently before it.... [V]oluminous amounts of information and data have been produced during these hearings ..., and the previous hearings ..., and all parties involved in all of these proceedings have been afforded an opportunity to examine all pertinent information and data relating to the unitization of the Hatter's Pond Field.... The information that Getty refused to provide [appellant] is not necessary to determine the issue presented before the Board.... [T]o the extent not already complied with, the discovery requests of [appellant] are unreasonable, untimely, will result in waste, and will not protect the coequal and correlative rights of all the mineral interest

---

1. Eubanks acquired his interest from Amax Petroleum after the unitization process began. Amax, however, is not involved in the present appeal and Eubanks apparently has succeeded to all of Amax' interest. Throughout this opinion, therefore, we refer only to Eubanks, even where the actual actor may have been Amax.

2. Texaco likewise acquired its interest from Getty Oil Company after the unitization process began.

owners in the proposed Hatter's Pond Field Unit.

On November 5, 1984, appellant and others filed suit in Alabama state circuit court challenging the Board's unitization order. Appellant alleged that Getty's disclosures were inadequate and its failure to disclose amounted to fraud. The failure to disclose, it was claimed, resulted in the Board's ordering an improper unitization. The court rejected the fraud contention, noting that there was no evidence to support the claim. On the ultimate issue of the Board's decision, however, the court reversed the Board, remanding the case to the Board for discovery of "reasonably relevant" evidence and for further consideration of the order.

The Circuit Court's decision was reversed on appeal. *State Oil and Gas Board v. Anderson,* 510 So.2d 250 (Ala.Civ.App. 1987), *cert. denied,* 510 So.2d 250 (Ala. 1987), *cert. denied,* 484 U.S. 955, 108 S.Ct. 348, 98 L.Ed.2d 374 (1987). The Alabama appellate court held that the Board's decision was reasonable and was supported by the evidence. 510 So.2d at 254–55. The court also held that the additional information sought by Eubanks "would have been merely cumulative" of Eubanks' other evidence in opposition to the unit. *Id.* at 256. The denial of certiorari by the United States Supreme Court ended the litigation in that case.

In December, 1988, appellant filed this suit in Federal District Court claiming that Getty and its successor in interest, Texaco, violated the Sherman Act, 15 U.S.C. § 2, in their efforts to secure unitization of the Hatter's Pond gas field. Appellees Texaco and Getty filed a motion for summary judgment on the grounds of res judicata and collateral estoppel. The district court granted appellee's motion for summary judgment, holding that appellant's claim

was barred by collateral estoppel. Appellant filed a timely notice of appeal.

## II. *Collateral Estoppel*

◼ A federal court determining the preclusive effect of prior state court judgments must apply the law of the state from which the judgment emerged. *Scott v. Fort Bend County,* 870 F.2d 164, 167 (5th Cir.1989). The judgment given preclusive effect by the district court issued from an Alabama state court. In Alabama, a judgment operates as collateral estoppel if: (1) the issue in question is identical to one involved in the previous suit, (2) the issue actually was litigated in the prior action, and (3) resolution of the issue was necessary to the prior judgment. *Timmons v. Central Bank of the South,* 528 So.2d 845, 847 (Ala.1988).[3]

### A. *Identical Issues*

◼ In his appeal before the Court of Civil Appeals of Alabama, Eubanks alleged that the Board denied Eubanks' due process rights when the Board refused to order production of three documents withheld by Getty. Eubanks alleged that the documents would prove that Getty had deceived the Board through the documents Getty had produced. In his antitrust complaint filed in federal district court, appellant alleged that:

> [b]y submitting misleading information to the Board regarding the financial viability of the proposed unit and its geological make up and withholding financial and geological information necessary for the Board to make a reasoned decision as to whether or not the unitization of the Hatter's Pond Field was appropriate as proposed, [appellees] knowingly and unlawfully did monopolize and attempt to monopolize a part of the trade and commerce in the relevant markets in violation of § 2 of the Sherman Act. (emphasis added).

**3.** In some cases, the Alabama Supreme Court specifies that collateral estoppel requires a fourth element, identical parties. *See,* e.g. *Pierce v. Rummell,* 535 So.2d 594, 596–97 (Ala. 1988), and *Campbell v. Campbell,* — So.2d — No. 88–1213 (Ala. Dec. 29, 1989) (enumerating the three standard elements and specifying that

these three elements must exist "between the same parties"). Even if Alabama law requires identity of parties for collateral estoppel, however, it is undisputed that appellant is Amax' successor in interest. As a privy to the earlier litigation, appellant satisfies the identity of parties requirement.

In sum, the issues of fact underlying both Eubanks' due process claim and his antitrust claim were that Getty withheld material information from the Board and submitted misleading information to it. It is clear that although the suits present different legal claims, the factual issues to be litigated in appellant's present suit are identical to the factual issues already litigated in the earlier action. It is well established that "[t]he distinguishing feature of the doctrine of collateral estoppel is that it precludes in a second or subsequent suit the relitigation of fact issues actually determined in a prior suit *regardless of whether the prior determination was based on the same cause of action* in the second suit." *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 459 (5th Cir.1971), *cert. denied*, 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971) (emphasis in original).

### B. *Actually Litigated*

■ Under Alabama law, an issue is actually litigated for purposes of collateral estoppel if the judgment is not based on default, stipulation, or consent. *See AAA Equip. & Rental, Inc. v. Bailey*, 384 So.2d 107, 112 (Ala.1980). Eubanks' brief before the Alabama Court of Civil Appeals included a twenty-three page argument in support of his claim that his due process rights were violated when he was denied access to the disputed documents. The court, however, found that the information "[a]t most ... would have been merely cumulative of [the] evidence supporting [Eubanks'] position that separate reservoirs existed in the field." 510 So.2d at 256. The Alabama judgment was not based on default, stipulation, or consent, but instead, was based on an issue actually contested before the court. We must conclude, therefore, that the parties actually litigated whether the Getty documents were material and whether withholding these documents was improper.

The documents appellant seeks were not, of course, part of the Board record. Appellant claims that because the Alabama Court of Civil Appeals could not hear new evidence but instead was limited to the facts in the Board's record, the court could not actually litigate whether the documents in question should have been produced. It is clear from the record, however, that the court was apprised of the nature of the documents that appellant claims were withheld. The court also had access to the multitudinous volumes of documents that were submitted to the Board. We do not accept appellant's contention that the court could not review the evidentiary support for the administrative decision without reviewing the specific documents themselves. Instead, we are of the opinion that the Alabama appellate court had an adequate record on the contents of the documents to reach an appellate decision as to the documents' materiality.

Appellant's brief before the Alabama Court of Civil Appeals also included an extensive discussion of whether the evidence supported the Board's order. The court held that the order "was supported by the evidence," the Alabama standard of review for this order. 510 So.2d at 254–55. Implicit in this holding is a finding that the evidence submitted to the Board by Getty was neither false nor misleading. Consequently, we must conclude that the parties actually litigated and the court actually decided that Getty did not prevail by submitting false and misleading information to the Board.

### C. *Necessary to the Judgment*

The court of civil appeals reversed the Alabama Circuit Court's decision on two grounds. First, the court held that the Board's order was reasonable and supported by the evidence. Second, the court held that Eubanks' due process rights were not violated because the withheld documents were not material. These grounds both were essential to the judgment. The court could not have reached its conclusion on the due process ground absent a finding that the documents Eubanks sought were not material. Likewise, the court could not have held that the Board's order was supported by the evidence absent a finding that the evidence upon which the Board relied was neither false nor misleading. We hold, therefore, that these findings were necessary to the judgment.

**964**

### III. *Conclusion*

The Alabama court has adjudicated that Getty did not submit false and misleading information to the Board and that the information Getty withheld was not material. This adjudication is preclusive of appellant's claim in the present suit that Getty "submitt[ed] misleading information to the Board ... and with[held] financial and geological information necessary for the Board to make a reasoned decision...." Appellant is collaterally estopped from re-litigating this issue, his only allegation of monopolizing conduct. He can not succeed in his antitrust claim based wholly upon these contentions already litigated. *See United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966). The district court properly granted summary judgment for appellees.

AFFIRMED.