CANADY, J.,
dissenting.
The crucial issue in this case is the meaning of the Engle jury’s finding 3 “that the [Engle ] defendants placed cigarettes on the market that were defective and unreasonably dangerous.” Engle v. Liggett Group, Inc., 945 So.2d 1246, 1277 (Fla.2006). Because I conclude that this finding does not mean what the Second District and the majority say it means, I dissent. I, therefore, would quash the decision of the Second District Court. Because the judgment that emerged from Engle was not a final judgment on the merits, I also disagree with the holding that the findings accepted in Engle have claim-preclusive effect.
To establish strict liability for Mrs. Douglas’s death, it must be shown that a defect in cigarettes sold by the defendants and consumed by Mrs. Douglas was the legal cause of Mrs. Douglas’s death. The majority concludes that Engle Phase I finding 3 was sufficient to establish “general causation” — that is, “the connection between the Engle defendants’ addictive cigarettes and the diseases in question.” Majority op. at 428. The majority reasons that in the selective acceptance of certain findings — including finding 3 — “this Court in Engle necessarily decided that the approved Phase I findings are specific enough.” Id. at 428 (emphasis added). Although this line of reasoning is plausible as an effort to give force to our prior determination to give finding 3 “res judica-ta” effect, I find it ultimately unconvincing. In effect, the majority concludes that because of our ruling regarding the preclu-sive effect of finding 3, that finding is “specific enough” to mean more than it actually says. But we cannot properly invest a finding with an enhanced meaning simply by determining that the finding has preclusive effect.
Finding 3 is a much too slender reed to support the imposition of liability on the defendants here. The finding is sufficient to establish that the defendants sold some cigarettes that were defective and unrea *437 sonably dangerous. But it is not sufficient to establish that all of the cigarettes sold by the defendants were defective and unreasonably dangerous. Nor is it sufficient to establish that the particular brands of cigarettes consumed by Mrs. Douglas were defective and unreasonably dangerous. The plaintiffs pursued their claims in Phase I based on several alternative theories of defect, some of which applied only to certain brands and designs. Given this context, it is unreasonable to read the jury’s finding that the defendants “placed cigarettes on the market that were defective and unreasonably dangerous” as a finding that all of the cigarettes placed on the market by the defendants were defective and unreasonably dangerous.
The plaintiffs very easily could have sought such a broad, all-encompassing finding by proposing a slightly altered jury verdict form which referred to all of the cigarettes placed on the market by the defendants. The plaintiffs failed, however, to do so. Whether that failure was inadvertent or calculated, it was the plaintiffs’ responsibility and cannot be laid at the door of the defendants. The attempt to lay it at the defendants’ door by way of the doctrine of claim preclusion is ill-conceived.
The majority errs in concluding that the acceptance in Engle of certain Phase I findings now requires application of claim preclusion rather than issue preclusion. The analysis underlying this conclusion is exactly backward. A factual finding made in a prior adjudication that did not result in a final judgment on the merits may serve as the basis for issue preclusion, but such a finding is an inadequate basis for claim preclusion.
I do not dispute the point “that a defendant’s common liability may be established through a class action and given binding effect in subsequent individual damages actions.” Id. at 429. But I do dispute the view that the doctrine of claim preclusion should be applied in support of the conclusion that the Engle Phase I findings were necessarily sufficient to establish the common liability of the defendants here.
The majority insists that issue preclusion only applies in subsequent litigation where a different claim is being litigated. See Majority op. at 483. This is not correct. Although issue preclusion most often comes into play as collateral estoppel— that is, during subsequent litigation of a different claim — it is by no means limited to such circumstances. “Issue preclusion is the modern term for both direct and collateral estoppel.” Larson v. United States, 89 Fed.Cl. 363, 390 (2009).
The doctrine of issue preclusion[] is available whether or not the second action involves a new claim or cause of action. If the second action involves the same claim or cause of action as the first, issue preclusion may be called direct estoppel. If a new claim or cause of action is involved, issue preclusion is commonly called collateral estoppel.
Id. (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4416 at 393 (2d ed.2002)). The availability of issue preclusion in subsequent litigation regarding the same claim is recognized in the Restatement (Second) of Judgments § 27 (1982): “When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.” The Restatement commentary states that “[i]ssue preclusion in a second action on the same claim is sometimes designated as direct estoppel.” Id. at cmt. b; see also Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d *438 56 (1984) (stating that the effect arising from issue preclusion “is referred to as direct or collateral estoppel”).
“The most common applications of direct estoppel arise from dismissal of a first action on grounds that do not go to the merits of the claim presented and that are not intended to preclude a second action.” Wright, supra § 4418. But the doctrine is not limited to such circumstances. “Direct estoppel also may arise from action that is designed to conclude part of a single claim on the merits, but to leave the way open for further action on the balance of the claim. Common issues that have been resolved in the first disposition are precluded in reaching the second disposition.” Id.
In concluding that the findings accepted in Engle should be given claim-preclusive effect, the majority collides with the cardinal rule that claim preclusion applies only where there has been a prior final “judgment on the merits.” Florida Dept. of Transp. v. Juliano, 801 So.2d 101, 105 (Fla.2001). As we recognized in Kimbrell v. Paige, 448 So.2d 1009, 1012 (Fla.1984) (emphasis added):
From Wade v. Clower, 94 Fla. 817, 114 So. 548[, 552] (1927), ... Florida courts have consistently adhered to the rule that:
A. judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action.
The Restatement (Second) of Judgments similarly recognizes the prevailing rule that claim preclusion only comes into play where there has been a full adjudication on the merits — namely, where the judgment on the claim
is not tentative, provisional, or contingent [but] represents the completion of all steps in the adjudication of the claim by the court, short of any steps by way of execution or enforcement that may be consequent upon the particular kind of adjudication.
Restatement (Second) of Judgments § 13, cmt. b (1982). For purposes of claim preclusion:
Finality will be lacking if an issue of law or fact essential to the adjudication of the claim has been reserved for future determination, or if the court has decided that the plaintiff should have relief against the defendant of the claim but the amount of the damages, or the form or scope of other relief, remains to be determined.

Id.

“The requirement of finality of judgment is interpreted strictly ... when bar or merger is at stake” — that is, when claim preclusion is in view. Id. at cmt. g. “This is natural when it is considered that the effect of a judgment as bar or merger is to ‘extinguish’ a claim, and, when there is merger, to create a new claim based on the judgment itself.” Id. A “more pliant view of finality ... is appropriate with respect to issue preclusion.” Id. at cmt. b. As section 13 of the Restatement (Second) of Judgments recognizes, “issue preclusion (as distinguished from merger and bar),” can be based on “any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.” A final judgment on the merits thus is not necessary for issue preclusion to come into play.
The majority recites the requirement of claim preclusion for a final judgment on the merits but then fails to apply that *439 requirement to the circumstances presented by this case. Here, of course, the Engle litigation did not result in a final judgment on the merits with respect to the members of the class. In Engle — stating the obvious — we specifically acknowledged that “the Phase I jury ‘did not determine whether the defendants were liable to anyone.’ ” Engle, 945 So.2d at 1263. The Phase I findings of the jury were determinations of fact on particular issues; the jury’s verdict did not fully adjudicate any claim and did not result in a final judgment on the merits. The application of claim preclusion in such circumstances is a radical departure from the well established Florida law concerning claim preclusion. And the majority has cited no authority— either within or outside the class action context — holding that a judgment that adjudicates only a portion of a claim is entitled to claim-preclusive effect.
The result reached by the majority is not warranted by our declaration in Engle that the accepted Phase I findings be “given res judicata effect.” Id. at 1277. In making that declaration, the Court employed no analysis concerning the differences between claim preclusion and issue preclusion. The Court instead simply announced the result. Although it is certainly true that Florida case law has frequently equated claim preclusion with res judicata, in modern usage the term res ju-dicata typically has a broader signification that encompasses both issue preclusion and claim preclusion. See Taylor v. Sturgell, 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (“The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as ‘res judicata.’ ”); Wright, supra, § 4402 (“Although the time has not yet come when courts can be forced into a single vocabulary, substantial progress has been made toward a convention that the broad ‘res judicata’ phrase refers to the distinctive effects of a judgment separately characterized as ‘claim preclusion’ and ‘issue preclusion.’”); Restatement (Second) of Judgments, ch. 3, intro, note (“When it is stated that ‘the rules of res judicata are applicable,’ it is meant that the rules as to the effect of the judgment as a merger or a bar or as a collateral or direct estoppel are applicable.”). It is much more reasonable to conclude that the Engle Court employed the term res judicata in its broader, modern sense than to conclude that the Court dispensed with a fundamental prerequisite for the application of claim preclusion — a final judgment on the merits — and did so without offering any explanation or justification.
Although the issue was not raised here by the plaintiffs, the majority disapproves the Second District’s rejection of negligence as a basis for the general verdict. Majority op. at 430, 435-36. Since this issue has not been properly presented and briefed by the parties, I would not address the question.
Based on my conclusion regarding the actual meaning of finding 3, I would rephrase the certified question as follows:
Is Engle Phase I finding 3 sufficient to establish that all of the cigarettes placed on the market by the Engle defendants were defective and unreasonably dangerous?
I would answer this question in the negative and quash the decision of the Second District Court.