**Christopher GREGORY,
Plaintiff-Appellant,**

v.

**Thomas J. DRURY, et al.,
Defendants-Appellees.**

**No. 86–2081.**

United States Court of Appeals,
Fifth Circuit.

Jan. 27, 1987.

James D. St. Clair, Hale & Door, Thomas N. O'Connor, Leila R. Kern, Boston, Mass., Curtis B. Dyer, Corpus Christi, Tex., for plaintiff-appellant.

Harry J. Schulz, Schulz & Schulz, Three Rivers, Tex., for Drury.

J.G. Adami, Jr., Perkins, Oden, Warburton, McNeill & Adami, Alice, Tex., for Goldapp, Kenedy, Oden and Alice Nat. Bank.

Grant, Stone & Forbes, Davis Grant, Austin, Tex., for Lytton, Jr.

Jim Mattox, Atty. Gen., John R. Vasquez, Asst. Atty. Gen., Austin, Tex., for Mattox.

Before CLARK, Chief Judge, WISDOM and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

We review the dismissal under Fed.R. Civ.P. 12 of a suit by a former Trappist Monk, Christopher Gregory, also known as Brother Leo. The suit named as defendants the Attorney General of the State of Texas, the Alice National Bank and then members of the John G. and Marie Stella Kenedy Memorial Foundation, including, among others, the Bishop of the Diocese of Corpus Christi. The complaint alleged that defendants conspired to deprive Brother Leo of a fair trial in a civil suit contesting control of a Texas foundation, depriving him of rights guaranteed by the fifth and fourteenth amendments to the United States Constitution and secured by a private right of action under Title 42 U.S.C. 1983, as well as his right to a trial by jury under state law.

The full story of this Texas-size will contest would challenge the imagination of even Larry McMurtry and has a cast that rivals his epic *Lonesome Dove*. But we enter at the very end of this legal saga, the end despite the entry of fresh counsel with ingenious arguments who try to salvage too much, too late, and with too little. We will tell only a small part of the story because as we see the case before us, the controlling issues need little factual flesh to be understood and decided. As we will explain, we are persuaded that the complaint stated no claim, and on that basis we affirm the district court's dismissal of the suit.

I

Mrs. Sarita Kenedy East was a resident of Sarita, located in Kenedy County, Texas. On January 22, 1960, at the age of 71, she created the John G. and Marie Stella Kenedy Memorial Foundation, a charitable organization under the Texas Non-Profit Corporation Act. She simultaneously executed a will naming the Foundation as the residuary devisee and legatee, provisions that would pass assets then worth in excess of twenty million dollars, assets now valued in excess of three hundred million dollars. Under Texas law and the by-laws of the Foundation, control of the Foundation rested with its members, who had full power to appoint the Foundation's directors. Mrs. East initially named herself as the sole member, but in February she added as members, Lee H. Lytton, Jr., a relative, and Jacob Floyd, one of her attorneys. Lytton and Floyd were members only until June 30, 1960 when, at the request of Mrs. East, they resigned. She remained as the

sole member of the Foundation until the end of the year when, by a codicil executed from her hospital bed in New York, she appointed Brother Leo as an additional member. Mrs. East died on February 11, 1961, leaving Brother Leo in control of the Foundation. Her will was admitted to probate by the County Court of Kenedy County on March 6, 1961. The will was soon contested by some thirty-nine persons, hopeful seekers that later grew to over one hundred persons, claiming to be heirs at law and seeking to set aside the will on the grounds of fraud, undue influence and lack of testamentary capacity. Of course, the Foundation's future turned on the validity of Mrs. East's 1960 will.

Meanwhile Lytton, represented by Floyd, sued in the 79th Judicial District Court of Jim Wells County, Texas alleging that Brother Leo had exercised undue influence over Mrs. East in persuading her to change the membership of the Foundation. Brother Leo then retained William R. Joyce, a lawyer from Washington D.C.

It is from these facts that the conspiracy to deprive Brother Leo of his constitutional rights, alleged in the suit before us, is said to have been born. According to Brother Leo, the practical difficulties of simultaneously defending the will from charges of undue influence, fraud and lack of capacity, while prosecuting similar charges leveled against Mrs. East's appointment of members to the Foundation during the same time period, fueled the efforts to settle the contest over Mrs. East's changes in the membership of the Foundation.

A tentative settlement of the suit over membership was reached among all parties except Brother Leo. He alleges that he initially refused to settle, but finally agreed in September 1963 after he was assigned to a remote monastery in Chile and then on threat of excommunication; that in any event his agreement was conditioned upon approval of the Holy See. While it is undisputed that Brother Leo signed a settlement agreement and agreed judgment to be filed in the 79th District Court, Brother Leo asserts that before it was filed he had

revoked his consent to entry of the consent judgment, and in a meeting in Miami, Florida in January 1964 he had expressly forbade Robert Jewett of the law firm of Baker and Botts from representing him; that for his obstinance he was sent to a monastery in Northern Canada and forbidden to discuss the case. He asserts that his Abbot, Dom Thomas Keating, on August 31, 1964, "falsely" sent a telegram to Jewett purporting to consent to the entry of the judgment on behalf of Brother Leo "as the superior of Christopher Gregory ... in virtue of an understanding which I have with him." The agreed judgment was presented to the trial court and filed on September 1, 1964, without notice to Joyce, Brother Leo's Washington D.C. counsel, and while he was incommunicado in the Canadian monastery. He asserts that he learned of the judgment entered in Jim Wells County only through an article in the New York Times.

In March 1966 Gregory filed a separate suit, termed a bill of review, seeking review of the interlocutory judgment of September 1, 1964. The judgment had been made interlocutory pending the outcome of the will contests. *See, e.g. Turcotte v. Trevino*, 499 S.W.2d 705 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.). In *Gregory v. Lytton*, 422 S.W.2d 586 (Tex. Civ.App.—San Antonio 1967, writ ref'd n.r.e.) the Texas Court of Civil Appeals affirmed the state district court's dismissal of the suit, on the basis that a bill of review did not lie to attack an interlocutory judgment.

On August 1, 1968, Brother Leo filed in the original suit in the District Court of Jim Wells County, the suit attacking Mrs. East's changes in Foundation membership, a motion to set aside the interlocutory judgment entered by that court on September 1, 1964. In his motion to set aside, Brother Leo alleged, *inter alia*, that his consent to the settlement agreement and agreed judgment were obtained by duress and without his effective consent. Here the matter rested for some eleven years.

On July 24, 1979, and after all the contests of the 1960 will had been concluded, the Attorney General of Texas filed a Motion for Entry of Final Judgment and to Dismiss Gregory's Motion to Set Aside Interlocutory Judgment. With a hearing on this motion scheduled for September 21, 1979, Brother Leo filed on September 13, 1979, an amended motion to set aside the agreed judgment. The amended motion for the first time requested trial by jury. The Alice National Bank, as independent executor of the East estate, Kenneth Oden, counsel to the bank, the Kenedy Memorial Foundation, Thomas J. Drury, Bishop of the Diocese of Corpus Christi, Lytton and the president of the bank intervened in the suit and answered Gregory's motion, denying all its allegations.

Brother Leo did not question this joinder of issues and all parties appeared at the hearing on September 21, 1979, including Brother Leo. Brother Leo testified at the hearing that while he had personally signed the agreed interlocutory judgment, he did not consent as of September 21, 1979, to the entry of the final judgment. Although he requested a jury, Gregory's counsel argued that he was only prepared for a hearing; that he had no notice that there would be a full trial of the issues. Regardless, he requested no continuance and did not press his jury demand. Brother Leo's Texas counsel argued that he was entitled to a "full" trial of the consent issue but that in any event, under Texas law the interlocutory judgment could not be made final absent his consent when final judgment was entered, a consent that was indisputably absent. The trial court rejected his argument and entered final judgment from which Brother Leo appealed.

In his appeal Brother Leo argued to the San Antonio Court of Civil Appeals that his consent when the judgment was made final was required, that he had been denied due process of law and his right to jury trial under both the Texas and United States Constitutions. That court affirmed. *Gregory v. White,* 604 S.W.2d 402 (Tex.Civ.App.—San Antonio 1980, writ ref'd. n.r.e.), *cert. denied,* 452 U.S. 939, 101 S.Ct. 3081, 69 L.Ed.2d 953 (1981). The panel was unanimous that the evidence conclusively demonstrated that Gregory had executed the settlement agreement and "neither the appellant's attorneys, the attorneys for the appellee, the trial judge, nor any of the other parties to the suit, knew of the conditional nature of his consent until several months after the judgment was rendered." *Id.* at 404. In sum, the court rejected the contention that Brother Leo's attorneys' lacked authority to represent him when the interlocutory judgment was filed and that, it held, was the critical time under Texas law.

In his application for writ of error to the Texas Supreme Court, Brother Leo urged that the Court of Civil Appeals had erred in five respects. First, it erred in affirming the trial courts' entry of final judgment without conducting a trial on the merits. Second, it erred in not requiring a full trial when the trial judge knew that a lack of consent was being asserted. Third, it erred in holding that under Texas law the jury demand was untimely. Fourth, it erred in rejecting his argument that entry of the final judgment denied him due process of law. Fifth, it erred in holding that a consent to entry of an interlocutory judgment was to be treated under Texas law as a consent to entry of a final judgment. The Texas Supreme Court refused the writ application with its notation of n.r.e.

In his Petition of Writ of Certiorari, Brother Leo, represented by his present counsel, urged that "The actions of the Courts below violated the due process clause of the Fourteenth Amendment to the United States Constitution," that he was denied due process and his right under state law to trial by jury. After denial of certiorari, Brother Leo filed this suit under 42 U.S.C. 1983.

II

Brother Leo alleged in his federal suit that he was "deprived ... of his rights to trial and trial by jury in violation of Due Process under the Fifth and Fourteenth Amendments to the United States Constitu-

tion." He argues that he never had a trial on the issues of his undue influence of Mrs. East, that he lacked adequate notice of the hearing of September 1, 1964, particularly given that once the interlocutory judgment was entered he was barred from attacking it, "either by way of appeal or when it was converted into a final judgment."

Defendants urged dismissal contending that no claim for constitutional wrong had been stated; that any claim was barred by laches and limitations and precluded by principles of res judicata and collateral estoppel.

We are persuaded that Brother Leo's effort to state a claim that Texas has deprived him of his rights to a hearing and to a trial by jury must fail.[1] The undisputed facts are that Texas heard his contention that his consent to entry of judgment was not effective and rejected it. A trial judge in Jim Wells County heard evidence, including the testimony of Brother Leo, and concluded that under Texas law his agreement was binding. His claims that the hearing on his motion to set aside the interlocutory judgment was inadequate under state law and the United States Constitution were thereafter heard and rejected by two levels of Texas Courts. At each stage he was represented by counsel.

Whatever the label placed on the proceeding in which Brother Leo's motion to set aside the interlocutory judgment was decided, and regardless of our view of its constitutional sufficiency, if we are bound by the state court decisions that he re-ceived a full opportunity to present his factual and legal theories—both that his earlier consent was ineffective and that his present consent was necessary—we must affirm the district court's dismissal. We turn to that issue.

### III

We must give to the state court rulings that the hearings given Brother Leo on his attack upon the interlocutory judgment were adequate under the United States Constitution and state law, the preclusive effect that Texas courts would give to them. *See* U.S. Const. art. IV, § 1; 28 U.S.C. § 1738.

*Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), held that federal courts must look to state rules of issue preclusion for issues actually litigated, but left open the possibility that federal issues that might have been litigated, but were not, would be treated differently under 42 U.S.C. § 1983. The court closed that door in *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), noting that "the policy concerns underlying § 1983 would [not] justify a distinction between the issue preclusive and the claim preclusive effect of state-court judgments." *Id.* at 897.

We have recently reviewed the Texas law of res judicata.[2] In *Flores v. Edinburg Consolidated Independent School District*, 741 F.2d 773 (5th Cir.1984), we explained that issues actually litigated are

---

**1.** All parties here and below have referred to matters extrinsic to the complaint. They were also considered by the district court in its grant of a motion to dismiss. Ordinarily, the defense of *res judicata* cannot be determined on a motion to dismiss for failure to state a claim. Here, the state court decisions were virtually apparent on the face of the complaint. In any event, all parties have treated the skeleton facts outlining the history of the state court decisions as a statement of the set of facts that Brother Leo might adduce under the complaint.

We could, with equal confidence, treat the ruling below as a grant of summary judgment. All parties had a full opportunity to present their arguments below and there is no issue over the facts essential to our opinion. In this circumstance, we see no reason to linger over the distinction, and we simply affirm the judgment for defendants entered by the district court.

**2.** In our recent opinion in *McWilliams v. McWilliams*, 804 F.2d 1400, 1403 (5th Cir.1986), Judge Wisdom described the competing interests in the decision to accept state law rules of both issue and claim preclusion in cases prosecuted under the Civil War Amendments concluding that "the difference between an inferior court and the United States Supreme Court effectively eliminates options in our decision-making function. We must honor the claim-preclusive effect of the state court's judgment, regardless of Section 1983."

barred in subsequent suits between the parties even though a different cause of action is asserted; that when the subsequent suit asserts the same cause of action, issues that might have been litigated are precluded as well. We rejected the suggestion that a suit under 42 U.S.C. § 1983 was necessarily a different cause of action from a state cause of action for tort drawn from the same facts explaining:

> that "a different cause of action" is one that proceeds not only on a sufficiently different legal theory but also on a different factual footing as not to require the trial of facts material to the former suit; that is, an action that can be maintained even if all the disputed issues raised in the plaintiff's original complaint are conceded in the defendant's favor.

*Id.* at 777.

We are persuaded that measured by Texas rules of preclusion every attack now leveled in federal court against the September 21, 1979, hearing in Jim Wells County was presented to the Texas courts, and rejected. Should we add, and we need not, that Brother Leo is also bound by what he might have argued in the Texas courts, his argument loses the little force it has. This is so because Brother Leo surely asserts in federal court the same cause of action he asserted in state court. He must be able to maintain his federal suit with "all the disputed issues raised in [his motion to set aside] ... conceded in ... defendant[s'] favor." *Id.* This he cannot do.

New and able counsel attempt to extricate Brother Leo from the reality that he has tried his constitutional and state law claims in state court, and lost. The escape argument, as we understand it, is that he does not seek a second trial of the state determined issues. Rather, it is the sum of all the rulings that is the alleged state deprivation of constitutional rights. He argues that changes in state law, with which he does not here quarrel, had the effect in *his* case of foreclosing a fair hearing; that he was placed in a legal catch 22.

The argument is that by first rejecting his bill of review on the basis that the bill would not lie to attack an interlocutory judgment, and later holding that his consent to the entry of the interlocutory judgment could not be defeated by objecting after its entry, Texas courts effectively held that "Gregory's first challenge was too early; his second challenge too late."

We find no such dilemma. That a bill of review attacking the interlocutory judgment was not allowed did not foreclose his motion to set aside the judgment filed in that case—as demonstrated by the fact that it was heard. Issue over the effectiveness of Brother Leo's consent to entry of the interlocutory judgment was joined on his motion to set aside. He then tried in the Texas courts the issue of the adequacy of that hearing under state law and the United States Constitution. Under § 1738 and the full faith and credit clause, whether or not he is now asserting the same cause of action, we must accept the state courts' decisions.

We do not here face the issue of the preclusive effect under state law of a state court judgment flawed by a systemic failure of constitutional dimensions. Nothing suggests that the appellate review of the rejection of Brother Leo's motion to set aside was constitutionally suspect, whether or not one agrees with the rulings. In this critical sense, there is no question but that Brother Leo's perceived Catch 22 did not exist.

Of course, the right to a jury including the timeliness of the jury denial were state law issues decided against Brother Leo and present no constitutional issue were we free to reconsider the state rulings, and as we have explained, we are not.

In sum, Brother Leo's federal court suit is ultimately an attack on the hearing held in Jim Well's County on September 21, 1979. It is a fight that he elected to make in the Texas courts with a right of review by writ of certiorari from the Supreme Court of the United States to the Texas Supreme Court. We are not free to decide the issues a second time.

We have rejected Brother Leo's arguments, but we are not persuaded that his appeal was frivolous. Defendants' request for double costs and counsel fees is rejected.

AFFIRMED.