**Sam POLUR, Plaintiff,**

v.

**Hyman RAFFE, A.R. Fuels, Inc., Ira Postel, P.C., Feltman, Karesh, Major & Farbman, Esqs., Donald F. Schneider, Esq., Alvin F. Klein, Justice of the Supreme Court, State of New York, County of New York, David H. Edwards, Jr., Justice of the Supreme Court, State of New York, County of New York, Donald F. Diamond, Special Referee of the Supreme Court, State of New York, County of New York, Defendants.**

No. 88 Civ. 2514(LLS).

United States District Court,
S.D. New York.

July 14, 1989.

Sam Polur, New York City, pro se.

Howard M. Bergson, Smithtown, N.Y., for defendants Hyman Raffe and A.R. Fuels, Inc.

Feltman, Karesh, Major & Farbman, New York City, for defendants Feltman, Karesh, Major & Farbman and Donald F. Schneider (Edward Weissman, of counsel).

STANTON, District Judge.

Defendants Hyman Raffe, A.R. Fuels, Inc., Feltman, Karesh, Major & Farbman, and Donald F. Schneider move under Fed. R.Civ.P. 12(b)(1), (6) and 56 for an order dismissing the complaint and a permanent injunction barring the plaintiff from bringing any further actions against them. Plaintiff also moves for summary judgment.

The defendants' motion is granted in part and denied in part. Plaintiff's motion is denied.

## BACKGROUND

In July 1985 Sam Polur, Esq. was held in criminal contempt by Justice Alvin Klein of the New York State Supreme Court in *Raffe v. Riccobono*, No. 9522/85 (N.Y. Sup.Ct. July 1, 1985) (*"Riccobono I"*). Polur brings this action under 42 U.S.C. § 1983 (1982) and the Racketeering Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. §§ 1961–68 (1982 and Supp. IV 1986) alleging that the defendants conspired to convict him of criminal contempt.

The contempt order arose out of litigation concerning Puccini Clothes, Ltd. ("Puccini"). Puccini was owned by Milton Kaufman, Eugene Dann, Robert Sorrentino and defendant Raffe. Kaufman, who was President and a director of Puccini, died in 1979. Citibank and Jerome H. Barr qualified as executors of his estate. The remaining shareholders did not call a meeting to elect a director to replace Kaufman, in violation of the Puccini's shareholders' agreement. Nor did they implement the provision in the shareholders' agreement governing the disposition of Kaufman's shares. In 1980 the executors petitioned the New York State Supreme Court for the dissolution of Puccini under N.Y.Bus. Corp.Law ("BCL") § 1104 on the ground that the shareholders failed to comply with the shareholders' agreement. The court granted the dissolution and named John V. Lindsay as receiver pursuant to BCL § 1202(a)(1). Lindsay declined the appointment. Raffe moved to have himself appointed receiver. The court denied the motion and instead appointed Lee Feltman, Esq., a partner at defendant Feltman, Karesh & Major (now Feltman, Karesh, Major & Farbman, hereinafter "FKMF"). Feltman retained FKMF as counsel. The court also disqualified Raffe's attorney, George Sassower, due to a conflict of interest caused by Sassower's previous representation of Dann and Sorrentino.

Sassower ignored the disqualification, and he and Raffe, either individually or jointly, "bombarded both the state and federal courts with numerous motions (over 300), law suits (35), and Article 78 proceedings (40) directed against [FKMF, Feltman], the attorneys for the other Puccini shareholders, various members of the judiciary, court appointed referees, and the New York State Attorney General." [1] *Sassower v. Sheriff of Westchester County,* 824 F.2d 184, 186 (2d Cir.1987). For a more detailed history of the litigation concerning the Puccini dissolution and receivership, see *Raffe v. Citibank, N.A.,* 84 Civ. 305 (E.D.N.Y. August 1, 1984), *aff'd mem.,* 779 F.2d 37 (2d Cir.1985) and *Raffe v. John Doe,* 619 F.Supp. 891 (S.D.N.Y.1985).

As a result of the number of suits Raffe and Sassower brought, FKMF and others obtained an injunction (the "injunction") prohibiting Raffe, Sassower and anyone acting in concert or cooperation with either of them from filing or serving any lawsuits against FKMF and others arising out of or relating to the Puccini dissolution and receivership. *In the Matter of the Application of Jerome H. Barr,* No. 1816/80 (N.Y. Sup.Ct. Jan. 23, 1985) (Gammerman, J.).

In May 1985 Polur served FKMF with the complaint in *Riccobono I* and appeared as attorney of record for Raffe. Polur also joined Raffe and Sassower as plaintiffs in two federal actions: *Raffe v. Riccobono,* No. 85 Civ. 3927 (S.D.N.Y. filed May 23, 1985); and *Raffe v. Relkin,* No. 85 Civ. 4158 (S.D.N.Y. filed June 3, 1985). In all three actions plaintiffs sued FKMF, various state court judges, and others, and claimed improprieties in Puccini's dissolution and receivership.[2]

FKMF moved in *Riccobono I* for an order holding Polur, Sassower, and Raffe in contempt for violating the injunction against commencing any further litigation. In a hearing before Justice Klein, Polur stated "I say before this Court ... I don't believe [the injunction] should be obeyed. I am not going to obey it and I am suggesting that George Sassower not obey that order because it is such a monstrosity." Exhibit H to FKMF and Schneider's memo in support, transcript p. 30. On July 1, 1985 Justice Klein held Polur in criminal

---

**1.** Sassower was ultimately disbarred. *See In the Matter of Sassower,* 700 F.Supp. 100 (E.D.N.Y. 1988).

**2.** The federal cases were assigned to Judge Conner as related to *Raffe v. John Doe,* 619 F.Supp. 891, 895 n. 1 (S.D.N.Y.1985). Judge Conner dismissed all three cases as barred by the principles of res judicata and collateral estoppel and granted the defendants' motion to enjoin Raffe and Sassower from filing against them in federal court any suit arising out of or relating to the Puccini dissolution and receivership. *Id.* at 897.

contempt for violating the injunction, sentenced him to 30 days in jail and ordered him to pay FKMF a $250.00 fine.

Polur moved for reargument, which was denied. The Appellate Division affirmed. *Riccobono I,* 113 A.D.2d 1038, 493 N.Y.S.2d 70 (1985). The Court of Appeals dismissed Polur's appeal as an appeal from a non-final order. *Riccobono I,* (Ct.App. Nov. 26, 1985). Polur's petition for a writ of certiorari was denied. *Polur v. New York,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), *reh'g denied,* 482 U.S. 921, 107 S.Ct. 3199, 96 L.Ed.2d 687 (1987).

Polur filed an Article 78 proceeding against Justice Klein seeking to prohibit him from enforcing the contempt order. He first sought an interim stay of the contempt order pursuant to N.Y.Civ. Prac.L. & R. § 7805 ("CPLR") which was denied by Judge Sullivan of the Appellate Division, First Department. Exhibit L to FKMF and Schneider's memo in support, transcript at 15. The Appellate Division dismissed the Article 78 proceeding. *In the Matter of the Application of Hyman Raffe, George Sassower, and Sam Polur,* 113 A.D.2d 1033, 493 N.Y.S.2d 676 (1985).

Justice Klein appointed Donald F. Diamond as special referee to appraise the reasonable amount of attorneys' fees. Referee Diamond assessed $12,500 against Polur. Polur then brought an Article 78 proceeding against Diamond, asserting that Justice Klein had directed him to issue a Report and Recommendation on sanctions, but that instead he had issued an invalid "judgment". Justice Gammerman dismissed the proceeding, holding "what you're trying to set aside is the assessment by [Diamond] of sanctions against you.... In doing that, however, [Diamond] was acting not as a referee but really as a Judge of this Court. And I think that your remedy is to go to the Appellate Division." *Polur v. Special Referee Donald Diamond,* No. 1816/80 (N.Y.Sup.Ct. April 15, 1986), transcript at p. 2. The Appellate Division upheld Diamond's determination. *In re Sam Polur,* 120 A.D.2d 992, 502 N.Y.S.2d 315 (1986).

While his appeal was pending, Mr. Polur filed two habeas corpus petitions in the New York State Courts. His petition before the New York Supreme Court was dismissed because of the pendency of his direct appeal. *The State Of New York ex rel. Sam Polur v. The Sheriff of the City of New York,* No. 16595/85 (New York Supreme Court July 17, 1985). His petition before the Appellate Division was dismissed for failure to appeal the injunction order and as a "successive" petition for a writ under CPLR § 7003(b). *The State of New York ex rel. George Sassower on behalf of Sam Polur,* 112 A.D.2d 119, 492 N.Y.S.2d 608, 609 (1985) (The court stated that "The papers submitted do not demonstrate any basis to conclude that the detention is illegal nor does the petitioner deny the actions taken were in violation of the order of Justice Gammerman....")

Polur also filed a petition for habeas corpus in the federal court, which was dismissed for failure to exhaust state remedies. *In the Matter of the Application of Hyman Raffe, George Sassower, and Sam Polur,* 85 Civ. 5112 (S.D.N.Y. July 29, 1985) (Lowe, J.)

After Polur's federal habeas corpus petition was dismissed, he filed *Polur v. Feltman, Karesh, Major & Farbman,* No. 17481/86 (N.Y.Sup.Ct. filed August 9, 1986) (Edwards, J.) (*"FKMF I"*) There, Polur sued FKMF, several FKMF attorneys, including defendant Donald F. Schneider, and Justice Klein alleging they had conspired to have Polur convicted of criminal contempt. On December 7, 1987 Justice Edwards dismissed the complaint as barred by the injunction.

After *FKMF I* was dismissed, Polur filed *Polur v. Feltman, Karesh, Major & Farbman,* 87 Civ. 8700 (S.D.N.Y. filed Dec. 9, 1987) (Lowe, J.) (*"FKMF II"*). There, he sued the same defendants as in *FKMF I,* alleging that they had violated his civil rights under 42 U.S.C. § 1983 by conspiring to convict him of criminal contempt and to restrain his bank account based on the judgment issued by Diamond. FKMF moved to dismiss and for sanctions under

Fed.R.Civ.P. · 11 and 28 U.S.C. § 1927.[3] Judge Lowe dismissed the complaint on the ground that Polur was collaterally estopped from asserting his claims, and awarded sanctions against him under both Fed.R.Civ.P. 11 and 28 U.S.C. § 1927.[4] *FKMF II*, (Aug. 25, 1988), slip op. at 1.

## SUMMARY OF PREVIOUS LITIGATION

Polur's direct appeal of his conviction for criminal contempt and his various suits alleging a conspiracy to convict him of criminal contempt and to restrain his bank account establish several facts relevant to this action: 1) the validity of Justice Klein's order holding him in criminal contempt; 2) the validity of Referee Diamond's imposition of sanctions against him; and 3) that he is collaterally estopped from claiming that FKMF, Schneider, and Justice Klein conspired to convict him of criminal contempt and to restrain his bank account.

## THIS ACTION

Polur commenced this action on April 8, 1988. He claims that in December 1984 Raffe retained him as counsel in various Puccini-related lawsuits. Raffe paid Polur with checks drawn on a company he owned, defendant A.R. Fuels, Inc. ("A.R."). In July 1985 Raffe allegedly retained defendant Ira Postel, Esq. as counsel without informing Polur; paying him for previous work, or substituting Postel as counsel of record. Polur asserts that FKMF and Schneider 1) conspired with the other defendants to convict him of criminal contempt in order to deprive him of his legal fees and force Raffe into settling lawsuits over the Puccini dissolution and receivership, 2) used Diamond's "invalid judgment"

to attach Polur's bank account and harm his "credit rating and his good name", and 3) conspired with Justice Edwards to dismiss his complaint in order to deprive him of access to the courts.

Polur asserts four claims for relief under section 1983. His first claim is against FKMF, Schneider and Justice Klein for conspiring to convict him of criminal contempt. His second claim is against Raffe, Postel and Justice Klein for conspiring to convict him of criminal contempt in order to interfere with his attorney-client relationship with Raffe. His third claim is against FKMF, Schneider and Diamond for conspiring to issue the alleged "judgment" which resulted in the attachment of his bank account. His fourth claim is against FKMF, Schneider and Justice Edwards for conspiring to deprive him of access to the courts.

Polur also asserts that the defendants violated section 1962(c) of RICO by engaging in mail fraud, wire fraud, extortion, and obstruction of justice.[5]

Polur alleges four predicate acts that constitute a pattern of racketeering activity. First, that FKMF, Schneider, Postel, and Raffe committed mail fraud in violation of 18 U.S.C. § 1341 by sending false documents through the mail in order to convict him of criminal contempt and obtain an invalid judgment of sanctions against him. Second, that FKMF and Schneider committed wire fraud in violation of 18 U.S.C. § 1343 by transmitting by means of interstate wire communications negative credit information on Polur when they knew that the judgment against him was invalid. Third, that all the defendants obstructed justice in violation of 18 U.S.C. § 1503 "by using the judicial processes ...

---

**3.** Section 1927 provides "Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

**4.** Judge Lowe denied Polur's motion to alter the judgment pursuant to Fed.R.Civ.P. 59(e).

**5.** Evidence of a violation of section 1962(c) "requires a showing of (1) conduct (2) of an enter-

prise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted).

Racketeering activity is the commission of certain predicate acts, specified in the statute, for which a defendant could be convicted, *id.* at 488, 105 S.Ct. at 3280, and a pattern of activity requires proof of at least two such acts, 18 U.S.C. § 1961(5).

to defraud [him] of his rights to personal and professional property". Fourth, that all the defendants committed extortion in violation of 18 U.S.C. § 1951 by extorting money from Raffe and Puccini.

Polur alleges that the defendants committed these acts through "the enterprise" of the Supreme Court of the State of New York, New York County.[6]

Defendants Raffe, A.R., FKMF, and Schneider move under Fed.R.Civ.P. 12(b)(1), (6) and 56 for an order dismissing the complaint and a permanent injunction barring the plaintiff from bringing any further actions against them. Plaintiff also moves for summary judgment.

## DISCUSSION

### 1. Res Judicata and Collateral Estoppel

The defendants assert that Polur's complaint "is simply a rehash of allegations of wrongdoing made against the Moving Defendants in various prior proceedings", and is therefore barred by the principles of res judicata and collateral estoppel.

Polur responds that the "lack of identity of issue precludes the giving of res judicata effect to the state court judgment." However, he fails to explain how the issues in this suit differ from the issues in his previous suits.

Under the Full Faith and Credit Clause of the Constitution and 28 U.S.C. § 1738 a federal court "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

The law in New York of res judicata is that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon differ-

ent theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981).

For collateral estoppel effect to be given to an earlier judgment, New York law requires 1) identity of issues, and 2) a full and fair opportunity to contest the issue in the previous action. *Ritchie v. Landau*, 475 F.2d 151, 155 (2d Cir.1973).

### A. Section 1983 claims

■ Polur's claims that FKMF, Schneider, and Justice Klein conspired to convict him of criminal contempt and that FKMF, Schneider, and Diamond conspired to obtain an invalid judgment of sanctions against him are identical to his section 1983 claims that Judge Lowe held barred by the principle of collateral estoppel in *FKMF II*. In any event, a review of the record establishes that these issues have been decided against Polur by the state courts where he had a full and fair opportunity to litigate them. Accordingly, these claims are dismissed.

His section 1983 claims alleging conspiracies between 1) Raffe, Postel, and Justice Klein to convict him of criminal contempt in order to interfere with his attorney-client relationship with Raffe and 2) FKMF, Schneider and Justice Edwards to deny him access to the courts have never been brought before, and thus cannot be dismissed on res judicata or collateral estoppel grounds.

■ However, to state a claim for relief under section 1983 Polur must allege that defendants have deprived him of a right secured by the Constitution or laws of the United States while acting under color of state law. Here, Polur alleges that Raffe, Postel, and Klein's actions were committed under color of state law "by virtue of the authority of defendant Klein as Justice of

---

6. Section 1961(4) includes as an enterprise "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The RICO enterprise is defined as a "group of persons associated together for a common purpose of engaging in a course of conduct" and "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981).

the Supreme Court State of New York, New York County". A judge is absolutely immune from liability under section 1983 except in the clear absence of jurisdiction, even if an action was taken "in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978). Polur alleges that Justice Klein lacked jurisdiction to hold him in criminal contempt. However, the Appellate Division's affirmance of Justice Klein's order established that Justice Klein had jurisdiction. Accordingly, Polur has failed to state a claim against Justice Klein.

 Raffe and Postel cannot be held liable under section 1983 since "a private person alleged to have conspired with a state judge ... who [is] entitled to immunity cannot be held liable, since he is not conspiring with persons acting under color of law against whom a valid claim could be stated." *Hill v. McClellan*, 490 F.2d 859, 860 (5th Cir.1974). Therefore, this claim must be dismissed.

Similarly, Polur alleges that FKMF's, Schneider's and Justice Edwards' actions were committed under the color of state law "by virtue of the authority of ... Edwards as Justice of the Supreme Court of the State of New York...." Polur does not allege that Justice Edwards lacked jurisdiction. Accordingly, he has failed to state a claim against Justice Edwards.

For the reasons stated above, Polur's claim that FKMF, Schneider and Edwards conspired to deprive him of access to the courts must be dismissed.

## B. The RICO claims

 Polur's RICO claims are based on the invalidity of the contempt order and the sanctions judgment. However, the validity of the contempt order and the sanctions judgment has been established in the state courts. Thus, even though Polur alleges these claims under a new legal theory, there is an identity of issues. Polur had a full and fair opportunity to litigate his claims in the state courts. Therefore, he is collaterally estopped from raising them

here. Accordingly, the RICO claims are dismissed.

Defendants Justice Klein, Justice Edwards, Diamond, and Postel have not answered. However, for the reasons stated above, the complaint against them should be dismissed.

## 2. The injunction

 FKMF and Schneider move for a permanent injunction enjoining Polur from further litigation against them, "their partners, associates or employees in connection with Puccini ..., including all transactions, occurrences and events which were a subject matter of Polur's prior suits against the Moving Defendants which were dismissed by defendant Justice Edwards and by ... Judge Lowe." FKMF and Schneider's memo in support, p. 2. Raffe and A.R. move for a similar injunction.

An injunction enjoining a plaintiff from commencing any further litigation is justified when a plaintiff has "[a] history of litigation entailing 'vexation, harassment, and needless expense to (other parties)' and [has caused] an unnecessary burden on the courts and their supporting personnel." *In Re Martin–Trigona*, 737 F.2d 1254, 1262 (2d Cir.1984) quoting *Matter of Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir. 1982), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1195, 75 L.Ed.2d 439 (1983).

Here, Polur's suits in both the state and federal courts establish a history of vexatious litigation against FKMF and Schneider. Before Polur was incarcerated he sued FKMF alleging improprieties in the dissolution and receivership of Puccini. Those suits were dismissed as barred by the principles of res judicata and collateral estoppel. After his incarceration, he sued FKMF, several FKMF attorneys, including Schneider, and Justice Klein alleging they conspired to convict him of criminal contempt. When that suit was dismissed as violating the injunction, he simply refiled his complaint in federal court. Before that suit was dismissed on the grounds of collateral estoppel, he filed this action, which, although it added several new defendants (Justice Edwards, Postel, and Raffe) and a

new legal theory of recovery (RICO), repeats his previous unsuccessful claims against FKMF and Schneider.[7]

While barring a litigant from the courthouse is a serious matter, Polur's "[c]ommencement of action upon action based on the same facts dressed in different garb, after ... having been repeatedly warned that the claims were barred ..., can only be explained as malicious conduct" *Kane v. City of New York,* 468 F.Supp. 586, 592 (S.D.N.Y.1979). Special Referee Diamond's imposition of sanctions for filing *Riccobono I* and Judge Lowe's imposition of attorneys' fees in dismissing *FKMF II* failed to impress upon Polur the impropriety of his behavior. There seems no reason to believe that mere dismissal of this suit will be any more effective than prior dismissals and sanctions were in persuading Mr. Polur to stop bringing repetitious lawsuits. Accordingly, FKMF and its individual attorneys are entitled to an order enjoining Mr. Polur from further litigation against them with respect to these matters.

Although this is the first suit Polur has commenced against Raffe and A.R., they argue that the injunction should also protect them against future suits he may bring because "Polur has indicated that he has, and will continue to abuse the Federal Courts for his own purposes. His vexatious litigation will continue unabated unless this Court enjoins him from continuing to involve Raffe and A.R. ... in vexatious litigation." Affidavit of Howard Bergson in support of Raffe and A.R.'s motion, sworn to October 5, 1988, at ¶ 9.

The mere possibility that Polur might bring future suits against Raffe and A.R. is insufficient to prohibit Polur from filing suits against them. Moreover, it appears that Polur may have a claim for legal fees allegedly owed to him by Raffe. Accordingly, Raffe and A.R.'s motion for an order prohibiting Polur from bringing suits against them is denied without prejudice to renewal upon a record establishing their need for such protection.

## CONCLUSION

Defendants Raffe, A.R., FKMF, and Schneider's motion to dismiss is granted. The complaint is also dismissed against defendants Klein, Edwards, Diamond, and Postel. FKMF and Schneider's motion for an order enjoining Polur from bringing suits against them arising out of or relating to the dissolution and receivership of Puccini and the litigation that followed is granted, but Raffe and A.R.'s motion for similar relief is denied. Polur's motion for summary judgment is denied.

Accordingly, Polur is hereby enjoined from filing in the federal courts any suit against FKMF, its partners, associates, or employees arising out of or relating to the dissolution and receivership of Puccini, Polur's conviction of criminal contempt, and the award of sanctions against him by Special Referee Diamond.

The Clerk of the Court is directed to dismiss the complaint.

So ordered.

---

7. Moreover, while defendants' motion to dismiss was pending, he moved to restrain FKMF and Schneider from proceeding with a grievance they filed against him before the New York State Appellate Division, First Judicial Department Disciplinary Committee and from attempting to have Polur found in contempt for filing the complaint in *FKMF I.*

Polur argued that the defendants were attempting to "get 'Res Judicata' rulings in other legal and juridical forums even while this is proceeding in Federal ... Court! It is nothing less than an audacious attempt to pre-empt this United States District Court from ruling on this very case." His motion was denied since "the mere prospect that a state court proceeding may have collateral estoppel or res judicata effects on a federal court action is not sufficient ground for granting an injunction" against state court actions. *Polur v. Raffe,* 88 Civ. 2514 (S.D. N.Y. May 23, 1989) slip op. at 1.